## LOUIS GLAZIER v. PETER G. BAILEY.

1. EQUITY—CLOUDS ON TITLE.—Independently of our statute, courts of equity have jurisdiction to remove claims which operate as clouds upon the title of the owner of real estate in possession, and in proper cases to decree that the instruments creating such clouds shall be given up and canceled; and the statute extends this remedy to real owners, whether in possession or not. But it is not to be inferred from this that the

trials to the titles can be had in equity, and thus change the form in which such questions have been tried by ejectment.

2. SAME—PRACTICE.—This species of relief must be sought by a bill *quia timet*, addressed to the sound discretion of the chancellor, upon the facts and circumstances of each particular case; the courts constantly refusing to lay down any rule limiting the power and discretion. Great caution is to be exercised by the courts to prevent abuse, and in many cases the parties must be left to their remedies at law. Huntington v. Allen, 44 Miss. 663, cited and approved.

APPEAL from the chancery court of Attala county. YOUNG, Chancellor.

The opinion of the court contains a sufficient statement of the case.

*John Handy* and *R. C. Smith*, for appellant,

Insisted that the bill of complaint shows no ground for equitable relief. The bill does not admit the legal title of the plaintiff in the suit at law, against whom an injunction is prayed, and set up an equitable title paramount to such legal title. There is no fraud alleged, no irreparable injury to the complainant sought to be remedied. No discovery is asked in the bill, nor is any other special matter stated therein to take the case out of the general rule of equity, that "where the party has a remedy at law, he cannot come into equity unless, from circumstances not within his control, he could not avail himself of his legal remedy, nor for the assertion of a right, the existence of which is properly determinable at law." Hilliard on Injunctions, 9, § 24. The allegations of the bill itself show an adequate remedy at law, and it follows, therefore, that the demurrer should have been sustained. Ib.; Leach v. Day, 27 Cal. 643; Gaines v. Nicholson, 9 How. (U. S.) 356. See Rev. Code of 1857, p. 308, art. 12; Heard v. Beard, 40 Miss. 799; Shep. Touch. 226; McAfee v. Lynch, 26 Miss. 257.

Where an injunction against an ejectment suit is granted, it is invariably upon the ground of an absence

of a valid legal defense to the suit in a court of law. In all such cases, the injunction bill operates as a con-· fession of judgment in the court of law. Warwick et al. v. Norvell, 1 Leigh, 95 ; 1 Freem. Ch. 347 ; Wildey v. Bonney's Lessee, 35 Miss. 77 ; 10 Paige, 298 ; Smith's Ch. Pr. 610 ; 3 Dan. Ch. Pr. 281–365.

Nor can the bill be sustained on the ground to quiet title, because the suit at law would have accomplished the same result, at the cost of one suit instead of two. Huntington et al. v. Allen, 44 Miss. 654.

*J. A. P. Campbell,* for appellee,

As to the jurisdiction of equity in this case, cited § 975 p. 191, Rev. Code of 1871, which is broad enough to sustain it. Besides this, the facts of the case, as detailed in the bill, consisting of the mortgage by Glazier, his subsequent acts in relation to it, his claim to the lots mortgaged, the lease to Wilson by Olive under authority from Glazier, the sale by Olive under the power of sale in the mortgage, the purchase by Bailey and the suit instituted by Glazier against Wilson, make a case for equitable interposition.

The second ground of demurrer is, that the court has no jurisdiction of the person of the defendant, or of the subject-matter in controversy.

The idea involved is, that because Glazier became bankrupt, and the mortgaged property was set apart to him as his exempt property, subject to the mortgage, his person and his exemption are to enjoy immunity from the interference of the courts of the state. But as to this, see Russell v. Cheatham, 8 S. & M. 710 ; Talbert v. Melton, 9 S. & M. 9, and Wooten et. al. v. Clark, 23 Miss. 75. Undoubtedly, the district court of the U. S., sitting in bankruptcy, might have assumed jurisdiction over Olive's claim, secured by mortgage of Glazier, who afterwards became, bankrupt, and might have adminis- tered the equity of redemption in Glazier, but it did not ;

and as the bankruptcy of Glazier in no manner affected the lien of the mortgage to Olive, it can not be denied that the jurisdiction of the state court existed. Again, the equity of the redemption of Glazier in the mortgaged lots was set apart to him by the assignee in bankruptcy. The U. S. court afterwards had no concern with that. The exempt property of the bankrupt, by express provision of the bankrupt law, does not vest in the assignee. It remains to the bankrupt, and when his claim to it, as exempt, is recognized by its being set apart to him, he is in, not by any new title, but of his former title, and holds it subject to any liens or incumbrances on it before, which remain unaffected by the bankruptcy. It is not true that bankruptcy and assignment to the bankrupt of exempt property purges it of liens and incumbrances, and confers on the bankrupt any new right. The exempt property allowed to the bankrupt is that much excepted and reserved from the investment of the assignee with the title to the effects of the bankrupt. That remains to the bankrupt, but just in the condition it was before. Bump's Bankruptcy (5th ed.), p. 133; *In re* C. Hunt, 5 Bankruptcy Register 493; Fehley v. Barr, 66 Penn. 196; Tuesley v. Robinson, 103 Mass. 558.

Olive was not bound to prove his claim in the bankrupt court against Glazier. He might have done so, but having a lien by mortgage, he had the right to keep out of the bankrupt court, and go against the thing mortgaged. The bankruptcy of Glazier did not revoke the power of sale in the mortgage, any more than the death of Glazier would have done it, and it is certain his death would not have done it. The equity of redemption was all that was in Glazier when he became bankrupt, and that did not rest in the judge or assignee, because Glazier claimed and had recognized his equity of redemption as his exempt property. So it is manifest the bankrupt court is out of the question. But the right of the bankrupt court to interfere in such cases is

a different question from the right of a defendant, when brought before a state court, to avoid its jurisdiction, on the idea of the immunity of his person as a favored subject of the bankrupt court. The ground on which the United States court will interfere at all in such cases, where its power is invoked, is that the interest of creditors requires its interference; but such is not the case here, for the mortgage rights of Olive, which are preserved, even in bankruptcy, and the equity of redemption constitute the whole subject-matter, and creditors can have no interest in the equity of redemption, for that can not go to creditors, being set apart as exempt property. Thus all idea of the propriety of any exercise of jurisdiction by the United States court, on any ground, in such case as this, is effectually excluded. It follows that no objection can exist to the bill on the score of want of jurisdiction over the person of Mr. Glazier, or the subject-matter of the controversy.

The mortgage is an exhibit, and cannot be looked at on demurrer. The bill certainly describes the property specifically enough.

The mortgage shows that the parties to it were " both of the county of Attala and state of Mississippi." The description of the property is " all of lot number one hundred and eight and the south half of lot number one hundred and twenty-seven, the same upon which is the residence of said L. Glazier."

L. Glazier resided on the lots in the town of Kosciusko, which are designated by numbers. *Id certum est, quod potest certum reddi.* The description in the mortgage raises a latent ambiguity, explainable by parol testimony, and which is resolved into certainty, by showing that the residence of L. Glazier was upon lot 108 and the south half of lot 127, in the town of Kosciusko, Attala county, Mississippi. Indeed, all doubt and uncertainty are removed by the writing under seal, executed by Glazier subsequently, in which he describes the

property as " my house and lot in the town of Kosci-
usko, Attala county, Mississippi," etc.　Harmon v. Jones,
7 S. & M. 111; McCaleb v. Pradat, 25 Miss. 257 ; Hanna
v. Renfro et al. 32 ib. 125 ; Whitworth v. Harris, 40 ib.
483 ; McGuire v. Stevens, 42 ib. 725 ; Morton v. Jack-
son, 1 S. & M. 493.

PEYTON, C. J. :
　Louis Glazier, being indebted to one F. V. Olive in·
the sum of $2,831.50, as evidenced by his promissory
note, dated 22d day of April, 1867, and due one day
after date, on the 6th day of January, 1868, to secure the
payment of said note, mortgaged to the said Olive, lot
number one hundred and eight and the south half of lot
number one hundred and twenty-seven, the same upon
which is the residence of said L. Glazier, with all build-
ings, fixtures, appurtenances and furniture then in said
house.
　The said mortgage contained a power of sale in case
the said note or any part thereof shall remain unpaid
after the first day of January, 1869.
　The said Olive, after taking said mortgage, leased the
premises to one S. E. Wilson for the year 1871, under
the following authority from said Glazier : " I herewith
give power to Frank V. Olive to rent my house and lot
in the town of Kosciusko, Attala county, Mississippi,
and appropriate the amount paid for rent on the above
house and lot for the interest on a note which is in his
possession, on the house and lot.
　　(Signed)　　　　　　　LOUIS GLAZIER. [SEAL.]
　By virtue of the power given by said mortgage, the
said Olive, on the 29th of January, 1872, sold and con-
veped said property to Peter G. Bailey, and on the
same day Glazier brought an action of ejectment in the
circuit court of Attala county, against the said S. E.
Wilson, to recover the possession of said real estate.
　And on the 26th day of April, 1872, the said Peter

G. Bailey filed his bill in the chancery court of said
county, praying that said Glazier may be restrained by
injunction from proceeding further against the said
Wilson, in the suit then pending in the circuit court of
said county, to recover the premises aforesaid, and that
upon final hearing, the injunction may be perpetuated,
and that the cloud resting upon his title to the premises,
by reason of the claim in said suit at law may be re-
moved, and that the title asserted by said Glazier to
the premises may be cancelled.

To this bill the defendant, Glazier, demurs, and
assigns various causes of demurrer, of which it is
deemed necessary to notice only the first, which denies
the equity of the bill, and asserts that the complainant's
remedy is full, adequate and complete at law. The de-
murrer was overruled, and hence the cause comes to
this court, by appeal on the part of the defendants.

Independently of our statute, courts of equity have
jurisdiction to remove a title or claim which may
operate as a cloud upon the title of the owner in pos-
session, and from which an injury to him might reason-
ably be feared, and for that purpose may decree that the
deeds or other instruments by which such cloud is cre-
ated, shall be given up and cancelled ; and our statute
confers the right to invoke this jurisdiction, whether
the real owner is in possession or not. But we are not
to infer from this that trials of titles to real estate can
be had in a court of equity by resorting to bills to re-
move clouds. It never could have been intended to
change the form in which bills to real estate have
been tried by actions of ejectment.

The application for this species of relief is by a bill,
*quia timet*, and is addressed to the sound discretion of the
chancellor, upon the circumstances of the particular
case, and the relief will ordinarily be afforded where
injury may reasonably be apprehended, and it is made to

appear that the retaining the title or claim is clearly against conscience.

In the exercise of this branch of equity jurisdiction, the courts constantly decline to lay down any rule which shall limit their power and discretion, as to the particular cases in which it shall be exerted; at the same time, considering its summary character and the danger of abuse, great caution will be observed in its exercise, unless injustice be done thereby; and in many cases equity would very properly decline to interfere, but leave the parties to their remedies at law.

The jurisdiction exercised in cases of this sort, is founded upon the administration of a protective or preventive justice. The party is relieved, as before stated, upon the principle of *quia timet;* that is, that the deeds, or other instruments sought to be cancelled, may be vexatiously or injuriously used against the rightful owner, when the evidence to impeach them may be lost; or that they may at the time throw a cloud or suspicion over his title or interest, and this, where his title is good at law. *A fortiori,* the party will have a right to come into equity, to have such deeds or other instruments delivered up and cancelled. When he has a defense against them, which is good in equity, but not capable of being made available at law. 1 Story Eq. Jur. 690, § 694.

The party who invokes this jurisdiction must have a good title to the real estate, either in law or equity. If he has the superior equitable title, and another the naked legal title, he has a right in equity to call for the legal title, whether he be in possession or not. But, if his title be a good legal title, and he is in possession of the real estate, and another person assumes to have a title or claim to the same, but has not attempted, in any way, to enforce it in the courts of the country, nor threatened to do so, he may, under such circumstances,

file his bill in equity to remove the cloud from his title, created by such claim.  If this claim were not cancelled or removed, the value of the property would thereby be diminished in the market, and the real owner injured without redress.  Hence, to enable him to enjoy the full benefit of his title, he may resort to a court of equity to remove the cloud that may rest upon it; for, being in possession, he has no other way to test the validity of the outstanding claim.  The real owner, being in possession of the lands thus claimed, cannot institute an action at law to settle the title, and the claimant, though setting up a claim to the lands, may not have brought a suit against him, nor have shown any intention to do so.  The jurisdiction of a court of equity in such case has been well settled, both upon principle and authority.  Eldridge v. Smith, 34 Vt. 484.

We are satisfied that no case is made out here by the complainant, rendering it incumbent, or even proper, for a court of equity to interpose and grant the relief asked for.  The court cannot, indeed, grant that relief without establishing a precedent, the bearing and extent of which we cannot foresee.

On his own showing, the complainant has, we think, an adequate and complete remedy at law.  He has a legal title, which, as the landlord, he may set up as a defense to the action of ejectment brought by Glazier against Wilson, his tenant, for the recovery of the land. The plaintiff in the action of ejectment in the circuit court of Attala county, must found his action upon what he claims to be a legal title, and that is the proper forum to try the title to the premises in controversy, and if, upon the trial of the action of ejectment, Bailey succeeds in establishing the fact that he is the rightful owner of the land, by proving his legal title to the property in dispute, he must prevail in the action, and judgment in his favor, under our statute, would be conclusive against the plaintiff in the ejectment suit, and

would give him ample protection in the enjoyment of the property.

This question has been adjudicated by this court, in the case of Huntington v. Allen, 44 Miss. 663, in which the court say : "It is scarcely to be supposed that the enlarged rule of the statute was meant to confer upon the chancery court the right to adjudicate upon the relative value and merits of conflicting titles under all circumstances.   That would be, in effect, to draw into that court, from the courts of law, the trial of ejectment." We entirely concur in the views then expressed.

We think, for the reasons herein stated, the court below erred in overruling the demurrer to the bill of complaint.

The decree must be reversed.   The demurrer of the defendant to the bill of complaint is sustained, and the bill dismissed, without prejudice, at the costs of the complainant.