MALLIAT *v.* VOGEL.[1]

DAVID *v.* SAME.[1]

1. TITLE TO LANDS—IDENTITY OF GRANTOR—EVIDENCE.

On a bill to quiet title, it appeared that the land in controversy was patented to "Andreas" P., and that the patentee had been absent from the State for 35 years. Defendant's claim of title was founded upon a recent deed from one "Andrew" P., whom he claimed to have found in Chicago in possession of the patent. The patent was not produced, nor was the grantor sworn as a witness; the only evidence going to his identity being that of a boarding-house keeper, who testified that one Andrew P. boarded with him at about the time the deed to defendant was executed. *Held*, that the evidence failed to identify defendant's grantor with the patentee of the land.

2. SAME—BILL TO REMOVE CLOUD—RECITAL IN DEED.

Where the only evidence produced by complainant in a bill to quiet title to show a conveyance to a prior grantor was a recital in the deed made by such grantor that "this land, on which I have paid taxes for over 22 years, is the same deeded to me by Andreas P., the deed for which was never recorded, but was destroyed in 1871 in the Chicago fire," complainant's bill must be dismissed, on the ground that the evidence was not sufficient to show title.

Appeals from Mason; McMahon, J. Submitted June 23, 1900. Decided December 4, 1900.

Bill by Frank J. Malliat against Albert Vogel and August Tiedemann, and by Pauline David and others against the same defendants, to quiet title. From decrees for complainants, defendants appeal. Reversed.

*Fitch & Reek*, for complainants.

*A. A. Keiser* and *P. T. Glassmire*, for defendants.

---

[1] Rehearing (complainants' application) denied February 27, 1901.

Long, J. These two cases were heard in the court below as one case, the questions raised in them being identical. The bills were filed to quiet complainants' title, in which cases they claimed to own together in fee the N. E. ¼ of section 12, in township 19 N., of range 18 W., being in Mason county, this State. One party owned one-half in fee and the other parties one-half.

It appears from the proof that in 1860 one Andreas C. Prussing became seised in fee of the land under a patent, which he caused to be recorded in the office of the register of deeds of that county. The complainants Pauline David and others claim one part of the land under deeds from Charles Mears, of that county, to one George B. Elms, dated August 29, 1885, and from George B. Elms to themselves, dated November 5, 1891. These deeds were recorded in the office of the register of deeds immediately upon their execution. The complainant Malliat claims title to his part of the land under a deed from Charles Mears to himself, dated October 1, 1894. This deed was duly recorded. The deed from Mears to Elms, which was recorded in 1885, contains this recitation:

"This land, upon which I have paid taxes for over twenty-two years, is the same deeded to me by Andreas Prussing, the deed for which was never recorded, but was destroyed in 1871 in the great Chicago fire."

The complainants, in order to make their case, and after putting these several deeds in evidence, introduced testimony tending to show that Prussing worked for Mears in 1861 and 1862, and purchased the land during that time; that, after he had made his purchase, he stated that he had bought it upon representations made by Mears that it had a quantity of timber on it, and that, after looking it over, he found there was none, and accused Mears of deceiving him in reference thereto when he made the purchase; that Mears then said, "Well, if you are not satisfied with the land, I will take it off your hands;" that Prussing shortly afterwards left Mason county, and his whereabouts thereafter were unknown.

It is also shown that from that time forward Mears had the lands assessed to himself, and paid the taxes thereon, up to the time he made the deeds to complainants. It appears that the land was wild and uncultivated, and no one was in actual possession of it until the complainants went into possession under their respective deeds. From that time forward complainants have been in possession, making valuable improvements thereon. Mears died some time prior to the filing of these bills.

Defendants claim title under a deed from a man by the name of Prussing; this deed being dated July 16, 1894. The defendant Vogel explains how he came to know of the break in the chain of title running to complainants. He obtained from Mears a description of lands in that vicinity claimed to be owned by Mears, his object being to get some lands for the benefit of a German aid society. In the examination of those titles he found the title to this piece was still in Prussing, as appeared by the record. He says he made some inquiries, and found that the man Prussing resided in Chicago; that he went there; and that his brother, who was a constable in Chicago, found Prussing for him, and brought him to the court-house in Chicago, and there Prussing made and delivered to him the deed. His testimony upon the question of the execution and delivery of the deed was as follows:

"*Q.* Were you present when that deed was executed?

"*A.* Yes, sir; it was executed in the court-house in the city of Chicago.

"*Q.* Who was present?

"*A.* There were a couple of men there that were present who knew Mr. Prussing. I don't know what the names are; but the head clerk of the circuit court, you have got his signature there. I don't know what his regular name was. But there were about 10 more witnesses present there. Of course, I don't know their names, and I didn't inquire for the names. There was an original patent for this land.

"*Q.* In whose possession was it?

"*A.* In Andrew Prussing's. I mean that it was in the possession of Andrew C. Prussing, who signed this deed.

He fetched the paper along into the court-house when the deed was made out.

"*Q.* Did you make any inquiries of him as to whether or not he still owned this land?

"*A.* Yes, sir. He told me he owned this land since 1860, and he did not know for sure how the thing stood with this land on account of he had worked for Mears eight or nine years. * * * When the year was up, he would settle with Mr. Mears, and Mr. Mears took the taxes out of his wages, and he claimed that he got a receipt for it. * * * After he left here, and got back to Chicago a couple of years, he said he sent a letter to the township treasurer for information to let him know how much the taxes were for each year, and he sent letters off for three or four years, and he never got an answer back; and he said on account of that he did not pay any more attention to it.

"*Q.* Did you ask him for a warranty deed?

"*A.* Yes; and he said, 'Probably I could give you a warranty deed, but on account of the taxes, and the way things stand now, I do not like to do it.' So I took a quitclaim deed. * * *

"*Q.* Did you ask him if he had a wife?

"*A.* Yes, sir. He said, 'I board myself; I never was married.' He said he was a common laborer, and had been out in California."

Upon his being asked how he came to find this man Prussing, he stated that when he was over at Mears', looking for land for the German aid society, he found, as he states it,—

"An old fellow over there, who was working. I don't know exactly what his name is. His name is John. I didn't know him very well. And I asked him, 'You know a man by the name of Prussing?' 'Yes,' he said, 'I know the fellow;' and I said, 'You know where he is?' and he said, 'The last time that I saw him he was in West Kinzie street, Chicago.' And when I got there I went and saw my brother, who is a constable in Chicago, and told him, and he went and hunted up the man Prussing."

He further testified that he had never seen the land, but that he had been told by Mr. Tiedemann, the other defendant in the case, that there was nice timber on it, and so he bought it, and paid $600 to Prussing.

The only other testimony in reference to the identity of Prussing is that given by John Ruppert and wife, of Chicago, who kept a boarding-house there in 1894, who each testified that a man by the name of Andrew Prussing boarded with them from the 19th of January until some time in March of the same year. The patent was not produced, nor does defendant Vogel claim that he made any application to Prussing for it. The whole defense is based upon the testimony of Vogel that he got a deed from a man who called himself Andrew C. Prussing, and his further testimony that this man Prussing had a patent for these lands. It appears also that this Prussing spelled his first name "Andrew" when he signed the deed, while the patent, as shown by the record, runs to "Andreas" Prussing.

The court below entered decrees in favor of complainants, and in the opinion filed determined the rights of the parties upon the ground that the defendants were estopped from setting up title because Prussing had permitted Mears to deal with this land as his own for more than 30 years.

While we think the court did not reach the right conclusion, yet we are satisfied that no one can read this record without being convinced that defendant Vogel has not established any claim to these lands. According to his statement, he accepted a deed from a man by the name of Prussing, without inquiring or ascertaining whether he was the true owner of the land. If he were the original Prussing, it seems to us it would have been easy to have found some proof of his identity; or, at least, that defendant Vogel would have required from this party the surrender of the patent which he claims to have seen in his hands at the time of taking the deed, and which would have aided his case materially. It is peculiar that he should have paid $600 for a piece of land which he had never seen, and take title for it from a man whose identity was so unsatisfactory, and apparently take no precaution to keep track of his whereabouts, so as to be

able to produce him as a witness, when, as was to be expected, complainants should attempt to prove title. Prussing had been absent from these lands since 1862; yet defendant Vogel claims to have readily found him in Chicago through the instrumentality of his brother, the constable, and yet could not or did not produce him as a witness here. The brother, even, is not produced as a witness to show that he ever knew the man Prussing, or that he is the identical Prussing named in the patent. There is no proof that the Prussing who boarded with the Rupperts was the same Prussing who owned the patent. These facts, together with the fact that the given name in the deed is spelled "Andrew" and "Andreas" in the patent, lead us to the conclusion that there is no identification of Prussing upon this record, and that defendants have no more title to the land than they would have had their deed been taken from any other stranger. Mears exercised acts of ownership over the land, paid the taxes, and treated it in every way as his own for nearly 40 years, during which time the owner of the patent set up no title and made no claim to it. The complainants are in possession, and have made valuable improvements as grantees of Mears.

But, while defendants have made no proof that satisfies us of the identity of this Prussing as the owner of the patent, yet this is not sufficient to sustain a bill to remove the cloud from the title. In order for a person successfully to invoke the interposition of a court of equity to remove a cloud from his title, he must not only show the invalidity of the title of the defendant, but also establish the validity of his own title. As was said in *Lawrence* v. *Zimpleman*, 37 Ark. 644: "The complainant in a bill to remove a cloud upon his title must himself have a reasonably clear title. He must proceed upon the strength of his own title, and not upon the weakness of the defendant's." This doctrine is supported by *Glazier* v. *Bailey*, 47 Miss. 402; *Shotwell* v. *Shotwell*, 24 N. J. Eq. 378; *Jones* v. *Railroad Co.*, 62 Ga. 718. The only evidence

of a conveyance from Prussing to Mears, from whom complainants claim title, is the recitation in the deed made by Mears to Elms, from whom the complainants took their deed. This recitation alone is not sufficient to establish the fact that Prussing ever made a deed to Mears.

The complainants' bills must be dismissed, with costs of both courts, without prejudice, however, to the rights of the parties to establish their titles in any other proceeding.

The other Justices concurred.