20888. THOMPSON *v.* THE STATE.

DECIDED DECEMBER 18, 1930.

*Thomas & Thomas,* for plaintiff in error.

*John A. Boykin,* solicitor-general, *J. W. LeCraw, E. A. Stephens,* contra.

LUKE, J. The indictment in this case charges Mrs. Bashilee Thompson with a felony, "for that said accused, in the county of Fulton and State of Georgia, on the 25th day of August, 1929, . . did unlawfully and wilfully aid and assist Aubrey Smith to escape from the custody of B. H. Dunaway, warden of the State prison farm at Milledgeville, Georgia, said warden having the lawful charge of Aubrey Smith, under and by virtue of a sentence from Fulton superior court wherein said Aubrey Smith had been convicted of a felony and sentenced to the penitentiary therefor; and she, the accused, did in Fulton county take the said Aubrey Smith out of the said county of Fulton and the State of Georgia, and did in said manner aid and assist the said Aubrey Smith in effecting said escape, and the accused well knew at the time she so aided and assisted the said Aubrey Smith in said escape that he was an escaped convict." The jury found the defendant guilty and fixed the penalty "at not less than one year nor more than four years." Her exception is to the judgment overruling her motion for a new trial.

It appears from the record that in December, 1928, Aubrey Smith was incarcerated in the State prison at Milledgeville under sentences aggregating one hundred and forty-five years; that five of Smith's sentences, totaling twenty-five years, were imposed for automobile thefts; that Smith escaped from prison on December 20, 1928, but was recaptured May 1, 1929; that very early on the morning of Thursday, July 25, 1929, Smith and four other prisoners effected their escape from said prison by the use of "hacksaw blades" sent Smith in a sealed can labeled "spaghetti;" that on the following night Smith, with Monty Wilson and J. L. Stevens, two of the prisoners who had escaped with him, came to Atlanta in a closed automobile; that in Atlanta they were met by Jack Livingston, who directed them to an apartment house kept by Clarence Jackson, who also was called Stutz Jackson; that Jackson's place was at the corner of Argonne Avenue and North Avenue; and that for several days Smith and Wilson secreted themselves at Jackson's place, and at an apartment located at 72 West Peachtree street.

Mrs. J. B. Reno testified, in substance, that she had charge of the apartment house at 72 West Peachtree street, and that Jack Livingston, who went under the name of H. D. Mabry, lived in one

of her apartments, with a woman purporting to be his wife, from the latter part of July into the following September. After testifying that Aubrey Smith spent three or four days at Livingston's apartment, Mrs. Reno further swore: "As to whether I saw Mrs. Bashilee Thompson before, I can not say that I have. Her face looks familiar, but I can not say that I have seen her down there. I have seen Aubrey Smith go out and get in an automobile. . . If I am not mistaken, it was a Lincoln."

Mrs. H. D. Mabry testified: "My name is Mrs. H. D. Mabry. During the month of July . . I lived at 72 West Peachtree place. . . As to whether H. D. Mabry and I had an apartment there, no; just I alone. . . He never came there. I know Monte Wilson. I know J. Aubrey Smith. I know him under the name 'Monk.' He frequented my apartment some. Jack Livingston arranged with me to allow him to come there. Jack was not going by the name of H. D. Mabry at that time. I knew him by the name of Jack Livingston. Regarding what arrangements Jack made with me about these two men, he just asked me if I would allow them to come there and stay. I agreed to it. . . I know Mrs. Bashilee Thompson slightly. She frequented my apartments a few times while these two men were there. As to whether I ever heard her say anything to Aubrey Smith about going anywhere, she was thinking of going to New York and wanted him to go with her. . . He didn't go, and she didn't either."

G. M. Ellis, a member of the Atlanta police force, testified: that about three months prior to the trial (the verdict bears date December 5, 1929) he and another officer brought the defendant back from Miami, Florida, in her blue-black Lincoln sedan automobile; that when they first asked her if she took Aubrey Smith out of Atlanta, she said she had not, but that she finally stated that she carried him as far as Tifton; that she said that she did not know the man by the name of Aubrey Smith, and called him "Monk;" that she stated that she did not know that Smith was wanted, and that she would never have carried him away if she had; that, to the best of witness's recollection, defendant told him that she and Smith left Atlanta at night; and that defendant returned willingly.

Robert McLeod Smith testified, in substance, that Aubrey Smith was in Miami, Florida, about two weeks before the trial, and that he had seen him going to and from Mrs. Thompson's apartments in

Jacksonville during the last week of July, 1929, and the first week of August of the same year.

The gist of the defendant's statement at the trial is: that she was a divorcee, without children or relatives, and conducted an apartment in Jacksonville for gentlemen only; that on two or three different occasions a man calling himself Monk Breedlove rented rooms from her; that while in Atlanta on a visit she saw Breedlove again and dined and rode with him; that when she started home she insisted that Breedlove go along with her; that at first he declined, but finally accompanied her to Tifton and left her there; that she "felt awfully hurt and hated to go on alone," but did; that she never saw the man again; and that if she had had the remotest idea that Breedlove was an escaped convict, she would never have taken him away from Atlanta.

In the case of *Smith* v. *State,* 8 *Ga. App.* 297 (68 S. E. 1071), this court clearly differentiated cases of escape from the personal custody of officers from cases of escape from places of confinement. In the former the offense is complete when the prisoner gets entirely away from the officer, "and thereafter the offense of aiding an escape can not attach to that particular transaction." On the other hand, this decision holds that "any one who knowingly aids a convict or attempts to aid him, either to get away from the chain-gang or to stay away, is guilty of violating section 315 of the Penal Code of 1895." It will be observed that the substance of sections 315 and 314 of the Penal Code of 1895 (sections 320 and 319 of the Penal Code of 1910) is the same as that of section 316 of the Penal Code of 1895 (section 321 of the Penal Code of 1910), the essential difference between these sections being that the former two are applicable to misdemeanors, while the latter applies to felonies. The latter reads: "If any person confined in the penitentiary shall escape therefrom, and be thereafter retaken, he shall be indicted for an escape, and, on conviction, shall be punished by imprisonment and labor in the penitentiary for not less than three months nor longer than four years; and any person who shall aid or assist a prisoner confined in the penitentiary to escape, or in an attempt to escape therefrom, shall receive the like punishment."

There was no demurrer to the indictment, the court substantially charged the foregoing code section without exception being taken to such charge, and the case was tried entirely upon the theory

that Aubrey Smith escaped from a place of confinement rather than from the mere personal custody of the warden. Viewing the case in this light, we are satisfied that the jury were warranted in concluding that the defendant knowingly aided Aubrey Smith to escape from the State prison in Milledgeville and reach some haven of safety in the State of Florida. We therefore hold that the trial judge did not err in overruling the general grounds of the motion for a new trial.

The first two grounds of the amendment to the motion for a new trial are merely elaborations of the general grounds which have already been passed upon. The next ground is controlled adversely to the contention of plaintiff in error by the following rule laid down in *Holmes* v. *State,* 29 *Ga. App.* 31 (113 S. E. 34): "Where no recommendation as to the punishment was made in a verdict of guilty, it was not cause for a new trial that the judge, in charging the jury as to their right to recommend that the accused be punished as for a misdemeanor, failed to inform them that the recommendation could be disregarded."

The next two grounds, numbered 8 and 9, fail to state the name of any witness whose testimony is alleged to have been improperly admitted, fail to set out said testimony either literally or in substance, and fail to disclose what objection was made to such testimony, or that any objection was interposed when the evidence was offered. Clearly these grounds are too defective to be considered by this court. See *Clare* v. *Drexler,* 152 *Ga.* 419 (6), (3), (5) (110 S. E. 176). For a brief on this subject, see Cozart's rules incorporated in *Trammell* v. *Shirley,* 38 *Ga. App.* 710 (145 S. E. 486), especially Rule 24.

Ground 10 is: "That the judge erred in admitting as evidence, and over proper objection, the testimony of Robert M. Smith that he saw the defendant upon four occasions with Aubrey Smith, in view of the fact that said Robert M. Smith did not plainly and clearly set out that he knew Aubrey Smith and could identify him as such." It is patent that the foregoing ground is defective in that it does not show what objection was interposed, or that any objection was made at the time the evidence was offered. Furthermore, the ground is clearly not understandable within itself. This ground is likewise too defective and incomplete for the consideration of this court. See cases cited above.

The next and last ground alleges "that the judge erred in admitting as evidence the indictments as set out on page thirty of the attached brief of evidence hereto, on the grounds: (*a*) that the indictments mentioned relating to Aubrey Smith were in no wise positively and clearly connected with the Aubrey Smith this defendant is alleged to have aided in escaping; (*b*) . . that an error was committed in admitting in evidence the indictments against Jack Livingston and Edna Smith, because Jack Livingston and Edna Smith are in no wise connected with the case herein, and . . that the same was admitted for the purpose of prejudicing the jury against your defendant, and because the same was highly prejudicial, and because the said Jack Livingston and Edna Smith have not been identified as the ones set out in said indictments, all of the above-mentioned indictments being admitted over proper objection." Neither the indictments referred to nor the substance thereof is incorporated in or attached to the ground of the motion for a new trial. Furthermore, it does not appear from this ground that any objection was made to the evidence when it was offered. It clearly appears, from a reading of the ground itself, that it is altogether too imperfect and incomplete to present any question for the consideration of this court.

It appearing that the evidence in this case supports the verdict, and that such special grounds of the motion for a ·new trial as are in proper form for consideration are without merit, the trial judge did not err in refusing to grant a new trial.

*Judgment affirmed.* *Broyles, C. J., and Bloodworth, J., concur.*