## MILLER v. EVERETT.

No. 13575.  April 16, 1941.

*M. E. O'Neal* and *P. D. Rich,* for plaintiff in error.
*A. B. Conger* and *John E. Drake,* contra.

Bell, Justice.  In April, 1932, Willie Everett filed a suit in equity against Mrs. Virginia Miller, widow by second marriage of the plaintiff's uncle Stephen Miller, to obtain a decree of title and right of possession of described land and certain personalty.  He prayed, "that the title to the property set forth in the petition be decreed to be petitioner's," and that petitioner have such other and further relief as to the court may seem meet and proper.  The defendant filed an answer, denying the material allegations of the petition.  No affirmative defense was pleaded.  On a trial of the case in 1936, the court directed a verdict in favor of the defendant.  The plaintiff filed a motion for new trial, in which he complained of such direction.  The motion was overruled, and he excepted.  Upon a review of the case as then presented, this court construed the petition and exhibit as follows:  "This is an equitable action seeking a decree for title and possession of property held by the widow of the plaintiff's uncle (his second wife).  The petitioner claims title based on an alleged contract between himself and his uncle and his uncle's first wife, fully performed by the petitioner, that if the petitioner would live with them until he should become twenty-one years old, they would give him all of their property at their death.  In reference to the motion for a new trial, it was held that "The evidence on material allegations of the petition was con-

flicting, rendering erroneous the direction of a verdict for the defendant. *Everett* v. *Miller,* 183 *Ga.* 343 (188 S. E. 342). The case was tried again in November, 1939, when a verdict in favor of the plaintiff was returned. The defendant moved for a new trial on the general grounds. Several grounds, complaining of rulings on admissibility of evidence, and assigning error on the charge of the court and an omission to charge, were added to the motion by amendment. The motion was overruled, and the defendant excepted.

■ The court instructed the jury upon the degree of proof necessary to support a verdict in the plaintiff's favor, stating in effect that the evidence must be so clear and convincing as to leave no reasonable doubt as to the existence of the alleged agreement between the plaintiff and his uncle, Stephen Miller; and that if the jury were thus satisfied beyond a reasonable doubt, and further believed that the plaintiff had complied with and performed his part of the agreement, then and in that event the agreement would be complete, and it would have been beyond the power of Stephen Miller to revoke it. In the same excerpt the judge stated to the jury that the meaning and effect of a verdict for the plaintiff would be that a decree would be entered for the plaintiff, declaring the property in question to be the property of Willie Everett. In the motion for new trial the charge was criticized in the following language: "This was not a case of specific performance, because there was no prayer therefor, and neither [were] the necessary parties before the court. The defendant was not a party to any contract that may have been made between Willie Everett and Stephen and Dallian Miller. This charge was unwarranted by the pleadings and the evidence, misleading to the jury, and fatal to the legal rights of the defendant." The defendant was sued as the widow and sole heir at law of Stephen Miller. The petition alleged that she was in possession of the property, claiming title thereto in virtue of such relationship. So far as shown by the record, there was no demurrer to the petition; and in the charge complained of the judge was merely submitting to the jury the issues made by the petition and the answer, and instructing them consistently with the plaintiff's allegations as to what would be the meaning or consequence of a verdict in plaintiff's favor. The charge was not erroneous for any of the reasons urged. As to suf-

ficiency of the prayers, see *Crawford* v. *Wilson*, 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (N. S.) 773); *Broderick* v. *Reid*, 164 *Ga.* 474 (2) (139 S. E. 18); *Bowers* v. *Dolen*, 187 *Ga.* 653 (5) (1 S. E. 2d, 734); *Guffin* v. *Kelly*, 191 *Ga.* 880 (14 S. E. 2d, 50). As to parties, see Code, § 113-903 (1); *Moore* v. *Smith*, 121 *Ga.* 479 (3) (49 S. E. 601); *Ellesworth* v. *McCoy*, 95 *Ga.* 44 (2) (22 S. E. 39); *Belt* v. *Lazenby*, 126 *Ga.* 767 (7), 775 (56 S. E. 81); *Hodges* v. *Wheeler*, 126 *Ga.* 848 (56 S. E. 76); *Pierce* v. *Middle Georgia Land & Lumber Co.*, 131 *Ga.* 99 (2) (61 S. E. 1114); *Steadham* v. *Cobb*, 186 *Ga.* 30, 41 (196 S. E. 730); *Cleaveland* v. *LaGrange Banking & Trust Co.*, 187 *Ga.* 65 (4) (200 S. E. 137); *Gibbs* v. *Harrelson*, 147 *Ga.* 404 (94 S. E. 235); *Terry* v. *Ellis*, 189 *Ga.* 698 (6, 7) (7 S. E. 2d, 282). The case clearly differs on its facts from *Greenfield* v. *McIntyre*, 112 *Ga.* 691 (38 S. E. 44), where it was held: "Under the provisions of the Code of this State, before heirs at law of a deceased intestate can recover land which had belonged to the estate of such intestate, they must allege and prove that there was no administration on the estate, or that the administrator, if there was one, assented to their bringing suit." On the question of parties, the case is in like manner different from the other cases relied on by counsel for the plaintiff in error. Compare *Yopp* v. *Atlantic Coast Line Railroad Co.*, 148 *Ga.* 539 (2) (97 S. E. 534); *Sammons* v. *Nabers*, 184 *Ga.* 269 (2) (191 S. E. 124). In several grounds of the motion for new trial, the movant complained of the admission of stated evidence over objection that the petition did not contain a prayer for specific performance. Under the ruling just made in reference to the charge to the jury, no error is shown by these grounds.

In one ground of the motion it was contended that the court erred in admitting in evidence the instrument attached to the petition as an exhibit, and called in the motion "the instrument sued on," over objection that it had not been recorded and its execution had not been proved. Substantially the same contention was presented in other grounds. There was no merit in any of these grounds. "Whenever the subscribing witnesses to an instrument in writing are dead, . . proof of the actual signing by, or of the handwriting of, the alleged maker shall be received as primary evidence of the fact of execution; and if such evidence shall not be attainable, the court may admit evidence of the handwriting of the

subscribing witnesses, or other secondary evidence, to establish such fact of execution." Code, § 38-707. The instrument purported to have been signed by Stephen Miller and his former wife, Dallian Miller, by their marks, and to have been witnessed by three persons, one a justice of the peace. It was dated January 29, 1902, and the evidence showed that both the signatory parties and all of the witnesses were dead at the time of the trial. Several witnesses testified as to the genuineness of the signatures of the witnesses, and the evidence adduced authorized the inference that proof of the "actual signing" by the parties was not attainable. In support of their contention that the execution of the instrument was not sufficiently proved, counsel rely upon the decision in *Strickland* v. *Babcock Lumber Co.*, 142 *Ga.* 120 (82 S. E. 531). In that case, however, the writing, was not signed by mark. In *Edenfield* v. *Brinson,* 149 *Ga.* 377 (2) (100 S. E. 373), it was held: "Where the alleged maker of an unrecorded deed, who signed by his mark, and the two subscribing witnesses to the instrument are dead, proof that the signatures of the two latter upon the instrument are in their genuine handwriting is evidence of the fact of execution; and the charge of the court, which in effect instructed the jury that such proof was prima facie evidence of the fact of the execution of the deed, was not contrary to law." See also *Rieves* v. *Smith,* 184 *Ga.* 657 (3) (192 S. E. 372, 112 A. L. R. 368). These two decisions control the instant question adversely to the plaintiff in error.

■ In several grounds of the motion it was contended that the court erred in allowing named witnesses for the plaintiff to testify as to statements of Stephen Miller which tended to show either directly or indirectly that he had made the agreement, the objection being that such evidence was hearsay. The evidence was not subject to this objection, but was admissible under the rule that "The declarations and entries by a person, since deceased, against his interest, and not made with a view to pending litigation, shall be admissible in evidence in any case." Code, § 38-309; *Pruett* v. *Cowsart,* 136 *Ga.* 756 (72 S. E. 30) ; *Brewer* v. *Mackey,* 177 *Ga.* 813 (2) (171 S. E. 273).

■ The court refused to permit the defendant, Mrs. Virginia Miller, to testify that her husband, Stephen Miller, had stated to her that he had given the plaintiff the fifty acres left by his former

wife, Dallian Miller, and that this was all he expected to give him, and that he intended to leave the balance of his property to the defendant. The court did not err in rejecting this evidence, as the statement referred to therein was self-serving and the evidence would have been hearsay. *Blalock* v. *Miland,* 87 *Ga.* 573 (5) (13 S. E. 551); *Lanier* v. *Huguley,* 91 *Ga.* 791 (3) (18 S. E. 39); *Drawdy* v. *Hesters,* 130 *Ga.* 161 (2) (60 S. E. 451, 15 L. R. A. (N. S.) 190); *Higgins* v. *Trentham,* 186 *Ga.* 264 (197 S. E. 862); *Gullatt* v. *Thompson,* 57 *Ga. App.* 669 (3) (196 S. E. 107). Evidence of the statement would not have been admissible under the rule that declarations by a person in possession in favor of his own title may be admitted to prove his adverse possession. Code, § 38-308. The agreement as alleged was that the property would go to Willie Everett only upon the death of Stephen Miller and his former wife, Dallian Miller; so that Stephen Miller was not in adverse possession at the time of such statement, and the evidence could not have tended to prove such possession.

■ In one ground of the motion the movant contended that the following testimony of the plaintiff, Willie Everett, was improperly admitted over objection that it related to transactions or communications with the deceased, Stephen Miller: "I went to live with Stephen and Dallian Miller when I was about twelve years old, and lived with them, made it home until I married. I was then about twenty-two years of age. I was paid nothing for my services. I did all kind of work about the place. I did not buy any clothes while there. I went to school. I did not live or work for any one else during that time." It appears in this ground, that the judge later concluded to sustain the objection of the defendant's counsel, and specifically instructed the jury that they would not consider any testimony of the plaintiff as to any communication or transaction between him and the deceased. It was asserted in the motion that the effort of the court "to later rule out said testimony was not sufficient to remove the harm done defendant by admitting same." Even if the evidence was subject to the objection taken, it had only an indirect relation to the agreement alleged in plaintiff's petition, and was not of such character that its erroneous admission could not be effectively cured by subsequent ruling and instruction on the part of the court. This ground does not show cause for a reversal. *Brown* v. *Matthews,* 79 *Ga.* 1

(5) (4 S. E. 13). This conclusion will apply also to other grounds complaining of the admission of further testimony of the plaintiff, to the effect that the written instrument was handed or given to him and had been in his possession since the date it was given to him, and except for "wear and tear" it was in the same shape as when he first received it, and that he did not see the instrument written or know of its execution; all of which testimony, according to the record, was admitted before the judge made his second ruling and gave the instruction to which reference has just been made. It can not be said that the evidence as finally excluded was not sufficiently identified by the instruction as to withdrawal, since it was further referred to therein as the evidence to which counsel for the defendant had "made several objections along that line."

It was complained by the movant that the court erred in not charging to the jury the law in reference to laches, as stated in the Code, §§ 3-712, 37-119. It appears from the record that Stephen Miller and the defendant, Mrs. Virginia Miller, were married in the year 1909, after the death of his former wife in 1903. Stephen Miller died in 1923. The suit was filed in 1932. The defendant did not plead the defense of laches, and at most her answer consisted of a mere general denial, seriatim, of the material allegations on which the plaintiff relied for a recovery. It appeared from the evidence that the plaintiff at no time informed Mrs. Miller that he claimed to have made the alleged contract with Stephen Miller until he filed the present suit more than nine years after the death of Stephen Miller, although he lived in the same community and could easily have so informed her. The defendant testified: "I first heard about this paper that I am being sued on on April 1, 1932, the sheriff brought it to me; it was a notice of this suit. Willie Everett never did say anything to me about it; he lived just across a lot of land from me. When my husband died, I continued to live in the same house and continued to use the same property. I have lived there continuously throughout all these years and claimed it as my own. I thought it was my own until I was sued for it. Nobody has questioned my right of possession or title to that land. I have sold timber off the land to Pat Morrison; he had the timber cut. Willie Everett [knew] it was being cut; it went by his gate; if he made any objection to it I did not know it.

I leased it for turpentine twice, and he made no objection to it. I have been in continuous possession of that land since Stephen Miller died in 1923, and I have been giving it in and paying taxes on it. I have been trying to have it farmed. I have been living on it all the time until last year, 1938, when I moved across the creek when I sold the land. The timber was cut, I don't know exactly, but about 1925 or 1926. It was turpentined along then too; the first time, it was the year after Mr. Miller died. Dr. Bridges leased it, and when that lease was out he leased it again and worked it right on. When the timber was being hauled out it was carried out the way I have to come to the big road, right by Willie Everett's house. I could not tell you how close to his house, not over fifty or a hundred yards from his front door. The timber went out along that road. . . He [Stephen Miller] acquired property after we married. . . I guess the land in dispute was that which he acquired when he was living with Dallian Miller," his former wife. There was no other evidence tending to show injury to the defendant as result of the plaintiff's delay in instituting the action or by his silence in the meantime; and so far as the foregoing evidence is concerned, it tended to show benefit rather than injury. It does show that the defendant paid the taxes, but no amounts were stated. She also had the use of the land, and sold the timber thereon both for use for turpentine purposes and for removal. There was no evidence of expenditures for improvements.

As to whether the plaintiff's delay rendered ascertainment of the truth difficult, he could in no event have filed the suit before the death of Stephen Miller, whether the agreement sued on was the oral understanding or was contained in the writing. In the meantime Dallian Miller, who was the only other signatory party to the writing, and all of the attesting witnesses, had died. Since all of these persons died before the plaintiff ever had the right to sue, the mere fact that none of them were living at the time of the trial should not be counted against him. In relying on the written instrument to any extent he had the burden of proving its execution, and the record does not affirmatively show that the delay after the death of Stephen Miller resulted in any disadvantage to the defendant in this respect. Even assuming that the evidence and circumstances, considered with mere lapse of time, would have au-

thorized submission of laches as an issue for the jury, yet, since that defense was not pleaded, the judge did not err in omitting, without request, to instruct the jury on such defense.  See, in this connection, *Powell* v. *Berry,* 145 *Ga.* 696 (5) (89 S. E. 753, L. R. A. 1917A, 306) ; *Lee* v. *Holman,* 184 *Ga.* 694 (4) (193 S. E. 68) ; *American Insurance Co.* v. *Bailey,* 6 *Ga. App.* 424 (6) (65 S. E. 160) ; *Chattahoochee Valley Railway Co.* v. *Bass,* 9 *Ga. App.* 83 (12) (70 S. E. 683).

■ The evidence did not *demand* a finding in the defendant's favor on the ground of laches.  "There is no absolute rule as to what constitutes laches or staleness of demand, and no one decision constitutes a precedent in the strict sense for another.  Each case is to be determined according to its own particular circumstances. . . Laches is not, like limitations, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced, an inequity founded on some intermediate change in conditions." *Equitable Building & Loan Association* v. *Brady,* 171 *Ga.* 576, 585 (156 S. E. 222) ; *Citizens & Southern National Bank* v. *Ellis,* 171 *Ga.* 717 (3-c) (156 S. E. 303) ; *Crews* v. *Crews,* 174 *Ga.* 45 (3) (162 S. E. 107) ; *Bleckley* v. *Bleckley,* 189 *Ga.* 47 (12) (5 S. E. 2d, 206).  On the substantial issues made by the pleadings the evidence was in conflict.  The jury settled this conflict in favor of the plaintiff.  Whatever may be the nature of the instrument attached to the petition as an exhibit, whether it was "the instrument sued on" or was pleaded merely as evidentiary of the alleged oral agreement, and even though it may have been testamentary in character, the evidence was sufficient to prove the case as laid.  The former decision necessarily adjudicated that on proof of the material allegations a verdict in the plaintiff's favor would be authorized.  Accordingly, no decision is required as to the precise legal nature of such instrument.

In conclusion, we deem it proper to say that we have, as we think, dealt sufficiently with all the questions raised, although we have not referred in express terms to every separate ground of the motion for a new trial.  The evidence authorized the verdict, and the court did not err in overruling the motion.

*Judgment affirmed.  All the Justices concur.*