## A01A1173. THOMPSON v. CLUB GROUP, LTD. et al.
### (553 SE2d 842)

MILLER, Judge.

There are two issues presented on appeal. The first is the question of whether at the time of a collision the negligent driver was acting as an employee or independent contractor for any or all of the three corporate defendants. The second issue is whether the driver's actions as an employee were within the course and scope of his employment. The evidence showed that although it was his day off from his regular employer, at the time of the collision the driver was acting at his employer's behest in picking up and delivering certain documents to the employer and that the employer controlled his actions in this regard. The evidence was undisputed that the other two defendants did not employ the driver nor control his actions during such document deliveries and thus at most had only an independent contractor relationship with him at the time of the collision. Thus, we reverse that portion of the judgment granting summary judgment in favor of the regular corporate employer and affirm the remainder of the judgment granting summary judgment to the other two defendant corporations.

In 1989, Club Group, Ltd. hired James Gray as a bellman for a resort it operated on Hilton Head Island, South Carolina. Gray's responsibilities included greeting and assisting guests and running various errands, including the distribution of office mail between the resort and Club Group's general administrative office. Beyond operating a resort, Club Group also provided administrative functions such as payroll and accounting for two affiliated entities — CGL of Savannah, Inc. and Low Country Golf Investors, Inc., each operating a golf course in Savannah and Hardeeville, respectively. CGL and Low Country would regularly deliver documents to Club Group so Club Group could perform the accounting and payroll services, which deliveries the manager of the Savannah golf course performed for a period of time.

When the manager moved, the controller for Club Group and its

president approached Gray about performing the delivery services on his day off, which was Friday of each week. Gray traveled from his residence in Savannah to Hilton Head each week to pick up his paycheck on Friday anyway, and so they agreed to pay him a flat fee of $35 to pick up documents from CGL each Friday (and from Low Country when its regular courier was unavailable), deliver them to Club Group, receive payroll checks for one of the golf courses, and then return to that golf course by 2:00 p.m. to deliver the payroll checks.

Gray performed and was paid for these delivery services for several months until the date of the auto accident. On Friday, May 10, 1996, Gray was speeding and possibly racing along the highway adjacent to CGL's Savannah golf course (where there were documents waiting to be picked up), when he lost control of his car, crossed the median, and collided head-on with a vehicle in which Betty Thompson was a passenger. Gray died in the accident, and Thompson was severely burned. Thompson brought the present lawsuit to recover damages from Gray's estate and from Club Group, CGL, and Low Country. Reasoning that no evidence showed that Gray was acting as an employee of any of the three corporate defendants at the time of the collision, the trial court granted them summary judgment, which Thompson appeals.

1. Thompson first argues that the court erred in considering the affidavit of Mark King,[1] the president of all three corporate defendants. King testified at length about the relationship between the corporations and Gray. Thompson contends that King could not testify about the oral agreement establishing the terms of the weekly delivery arrangement, as King's testimony about Gray's assent to this agreement constitutes hearsay.

We note first that King's affidavit primarily references his personal knowledge and observations of the terms and workings of the arrangement with Gray and thus is not hearsay. We also note that Thompson makes no objection to King's deposition, in which much of the same testimony is reiterated. In any case, to the extent King implies or states that Gray agreed to the arrangement, OCGA § 24-3-8 provides that "[d]eclarations and entries made by a person since deceased against his interest and not made with a view to pending litigation shall be admissible in evidence in any case." Alleged oral agreements by the deceased are considered against the deceased's interest and are therefore not objectionable as hearsay but are admissible.[2] Thompson's enumeration must fail.

---

[1] King actually submitted two affidavits, which for the most part contained the same testimony.

[2] *Martin v. Turner*, 235 Ga. 35, 36 (1) (218 SE2d 789) (1975); accord *Miller v. Everett*, 192 Ga. 26, 30 (3) (14 SE2d 449) (1941).

2. Thompson urges that the trial court erred in holding as a matter of law that Gray performed no services for Club Group on the date of the accident. As there was evidence from which a jury could infer that Gray was performing services for Club Group at the time of the collision, we agree with Thompson and reverse this portion of the summary judgment order.

"When an employee causes an injury to another, the test to determine if the employer is liable is whether the employee was acting within the scope of the employee's employment and on the business of the employer at the time of the injury."[3] Thus, if the employer authorized the employee to accomplish the purpose in pursuance of which the tort was committed, the employer is liable.[4]

Summary judgment is proper only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[5] On appeal we review the evidence de novo in the light most favorable to the nonmovant.[6]

It is undisputed that at the time of the collision Gray was a full-time employee of Club Group. Since Friday was generally considered his day off from this employment, the question is whether Gray nevertheless was acting within the scope of his employment and on the business of Club Group at the time of the collision. Construed in favor of Thompson, several items of evidence would allow a jury to infer such.

First, before Gray took over the delivery responsibilities, they had simply been a part of the job responsibilities of the manager of the Savannah golf course. Since the $35 paid to Gray was based at least in part on the number of miles involved and on the wear and tear on his vehicle, and since one could infer that the $35 barely covered these expenses (the round trip exceeded 119 miles[7]), a jury could also infer that this courier duty became a part of Gray's responsibilities as an employee of Club Group, with Club Group simply insuring that Gray was reimbursed his expenses from the trip. In light of Gray's ongoing responsibility to deliver documents between the resort and Club Group's general administrative offices, this additional delivery responsibility could be seen as a natural outgrowth of that. Indeed, King admitted that Gray took on the new delivery responsibility at this low price as "a favor" to Club Group. And simi-

---

[3] (Citations omitted.) *Chorey, Taylor & Feil, P.C. v. Clark*, 273 Ga. 143, 144 (1) (539 SE2d 139) (2000).

[4] Id.

[5] OCGA § 9-11-56 (c).

[6] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[7] Cf. 2000-49 IRB, p. 570, Rev. Proc. 2000-48 § 2.01 (1) (currently allowing a standard mileage rate of 34.5 cents per mile for federal tax deduction purposes).

lar to an employee, Gray was to be paid the $35 each week even if no deliveries were made. After Gray's death, the managers at the golf courses took over the duty of delivering the documents as a part of their job responsibilities.

Second, the delivery of these documents was in furtherance of Club Group's business, for it could not perform its administrative duties for CGL and Low Country without these documents.

Third, evidence showed that Club Group controlled Gray in his performance of these services. King (Club Group's president) testified he had the power to fire Gray from his bellman position at Club Group if he did not perform his courier services to the golf courses satisfactorily or if he violated traffic laws. And King candidly admitted that he controlled Gray in the performance of all his responsibilities, even if Gray were considered an independent contractor. Due to his control over Gray, King did not feel it necessary that the courier arrangement be reduced to writing.

Fourth, even though at the time of the accident Gray had not yet picked up the documents from the Savannah golf course, the accident occurred on the road adjacent to the golf course in the morning at a time that would allow Gray to pick up the documents, travel to Club Group, and be back to the golf course by the required time of 2:00 p.m. Some evidence showed that the $35 payment was calculated based on the round-trip mileage from Gray's residence to the various pick-up and drop-off points. As this could be construed as a "special" errand made at his employer's request, the fact that Gray had not yet arrived at the Savannah golf course does not necessarily insulate Club Group from liability.[8]

From the above evidence a jury could infer that Gray was acting within the scope of his employment for Club Group. The evidence that he was speeding or even racing does not necessarily preclude such a finding.[9] The trial court erred in granting summary judgment to Club Group.

3. The same is not true for the summary judgment granted to CGL and Low Country, for at most Gray's relationships with these two corporations were as an independent contractor. OCGA § 51-2-4 provides that "[a]n employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer." Whether a negligent driver was acting as an

---

[8] See *Patterson v. Southeastern Newspapers*, 243 Ga. App. 241, 242-244 (1) (533 SE2d 119) (2000).

[9] See *Barfield v. Royal Ins. Co.*, 228 Ga. App. 841, 844 (2) (492 SE2d 688) (1997) (employee's disobedience to company rules or criminal laws does not necessarily insulate employer from liability).

employee of a defendant or as an independent contractor depends on whether the contract gave, or the defendant assumed, the right to control the time, manner, and method of executing the work as distinguished from the right merely to require certain results.[10]

The undisputed evidence shows at most an independent contractor relationship between Gray and either CGL or Low Country. CGL paid Gray $35 to deliver documents to Club Group and to receive documents in return by 2:00 p.m. each Friday. Low Country reimbursed CGL a portion of that payment for Gray's occasional delivery of documents to and from Low Country. Other than the 2:00 p.m. deadline, neither corporation controlled the time, manner, and method by which Gray performed his courier services. They did not (i) require him to use a particular route, (ii) provide him with a vehicle or require him to use a particular car or truck, (iii) control whether Gray hired anyone else to assist him in performing his courier services, (iv) provide him with insurance on his vehicle or dictate the type and amount of such insurance, (v) provide him with any employee benefits, (vi) set his working hours, (vii) provide him with or require him to undergo any training, (viii) require him to follow any employment policies or procedures applicable to CGL or Low Country employees, (ix) require him to submit an employment application, (x) subject him to any performance reviews, (xi) require him to submit to medical examinations or drug and alcohol testing, (xii) deduct FICA and taxes from his paycheck, (xiii) pay him out of the CGL or Low Country payroll accounts, (xiv) require him to maintain an office or work out of a specific location, or (xv) supervise the performance of his courier services. The court did not err in concluding as a matter of law that Gray had at most independent contractor relationships with these two entities.[11]

Moreover, the undisputed evidence shows that on the day of the accident, Gray was not scheduled to stop by Low Country to pick up any documents, as there were no documents to be picked up or delivered that day at Low Country. Thus, even if Gray had had an employment relationship with Low Country, that particular Friday he was not acting in furtherance of that relationship.

4. In her final enumeration of error, Thompson contends that the trial court erred in not according collateral estoppel effect to an administrative decision of the South Carolina Workers' Compensa-

---

[10] *Allison v. Nat. Assn. for the Self-Employed*, 187 Ga. App. 592 (1) (370 SE2d 841) (1988); see generally *Redd v. Brisbon*, 113 Ga. App. 23, 24 (147 SE2d 15) (1966) (to determine whether relationship existed, court must determine whether alleged servant was subject to defendant's orders and control and liable to be discharged for disobedience or misconduct); *Graham v. Cleveland*, 58 Ga. App. 810, 813 (1) (200 SE 184) (1938).

[11] See *Perry v. Soil Remediation*, 221 Ga. App. 386, 387-388 (1) (471 SE2d 320) (1996); compare *Davis v. Beasley Timber Co.*, 241 Ga. App. 706, 707-708 (1) (527 SE2d 221) (1999).

tion Commission, in which the Commission held under South Carolina law that Gray was acting within the scope of his employment with Club Group at the time of the accident. This decision has subsequently been upheld on appeal.[12]

Setting aside whether the issue in the Commission's decision is the same as the issue here, we note that Thompson was not a party to that case. Binding precedent of this court as set forth in *Wickliffe v. Wickliffe Co.*[13] precludes the application of collateral estoppel unless the previous action was between the same parties or their privies.[14] We decline Thompson's invitation to overrule *Wickliffe*. The trial court did not err.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 9, 2001 —
RECONSIDERATION DENIED AUGUST 24, 2001 — 

*Whelchel, Brown, Readdick & Bumgartner, Richard A. Brown, Jr., Brad S. McLelland*, for appellant.

*Ellis, Painter, Ratterree & Bart, Sarah B. Akins, Lee C. Mundell, Brennan, Harris & Rominger, Edward R. Stabell III*, for appellees.

---

[12] *Gray v. Club Group, Ltd.*, 339 S.C. 173 (528 SE2d 435) (App. 2000).
[13] 227 Ga. App. 432, 433-434 (1) (489 SE2d 153) (1997) (whole court).
[14] Accord *Smith v. Nasserazad*, 247 Ga. App. 457, 458 (2) (544 SE2d 186) (2001).