JONES *et al.*, executors, *vs.* THE GEORGIA RAILROAD COMPANY.

To cancel, as a cloud upon complainant's title, a deed which was duly recorded and had been upon record for forty years before the filing of the bill, it is not enough that the complainant has the better legal title, by reason of prescription, etc.; but it must appear that his is the better title in justice and equity. If the main transaction has become involved in the obscurities of time, so that it is a mystery not now explainable why conflicting muniments of title, emanating from the same source, are outstanding, each party will be left to make such use of his deed in a court of law as he can. A court of equity will neither cancel the older deed, nor enjoin the grantee therein from asserting it as a muniment of title. Where, on the case made, there is nothing higher than the ordinary rules of law to bind the conscience, there is nothing higher to bind the conduct.

Equity. Cloud on title. Deeds. Before Judge GIB-SON. Richmond Superior Court. October Term, 1878.

On February 12th, 1836, Nelson conveyed to the defendant a certain lot of land. The deed thereto was recorded on the 25th of the following May. On March 4, of the next year, Nelson executed two deeds, which together covered the same property—one to defendant, embracing a

strip forty feet in width; the other to George Jones, jr., covering the remaining portion of the lot. On the 10th of the same month, George Jones, jr. conveyed to Sarah Jones.

These last two deeds from Nelson bear the same date, are witnessed by the same persons, and were drawn by the same draftsman, to-wit: Henry H. Cumming, Esq. One of the witnesses, C. B. Martin, was then book-keeper of defendant, and the other, J. Edgar Thompson, was then chief engineer of defendant and authorized to make purchases or exchanges for said defendant of property at Augusta, such as William Cumming and Hays Bowdry in consultation with him might think best, etc. He surveyed and located the railroad, superintended the laying of the track, and was familiar with all the lands purchased for the use of same.

The deed to defendant recites the fact that, at the time, the lot in its entirety belonged to Matthew Nelson; the deed to George Jones, Jr. bounds the part sold to him by the part sold to the defendant, showing that the deed to George Jones, Jr. was second to the deed to defendant, or drawn in pursuance of the sale to defendant; this strip of defendant represents the right of way of the Georgia Railroad and has been so used ever since the 4th March, and also the same part of said entire lot was so used before that time for road-bed, etc., of defendant.

George Jones and Sarah Jones took immediate possession of the property covered by the deed from Nelson to the former, and they or their representatives have so remained ever since. The possession has been continued, notorious, peaceable, and with the full knowledge of the authorities of the Georgia Railroad. No claim was asserted on the part of said road to the land until the year 1875 or 1876, when it set up posts on the corners of the whole lot, in its entirety, embracing its strip as well as the part conveyed to George Jones, Jr.

Upon these facts, the executors of Sarah Jones filed their bill to enjoin the Georgia Railroad from asserting its deed

of February 12, 1836, as a muniment of title, and to cancel it as a cloud upon complainants' title.

Upon the conclusion of the testimony, defendant moved that the bill be dismissed for want of jurisdiction to give the complainants a remedy. The motion was sustained and complainants excepted.

W. R. McLaws; Jno. T. Shewmake, for plaintiffs in error, cited 54 *Ga.*, 168; 39 *Ib.*, 550; 10 *Ib.*, 201; 1 *Ib.*, 551; 40 *Ib.*, 479; 54 *Ib.*, 168; 59 *Ib.*, 355; 52 *Ib.*, 300; 2d Smith's (*L. C.*), 322; 21st N. Y., 315, 330; 1st Greenleaf's Ev., §§23, 24, 27, 33, 34, 38, 41, 44, 46, 49, 211, 221, 189; 56 *Ga.*, 249; Code, §3232; Story's Eq. Jur., §§694, 699, 700, 705; 2 *Ga.*, 413; 8 *Ib.*, 457; 28 *Ib.*, 442; 35 *Ib.*, 208; 41 *Ib.*, 376; 47 N. H., 270; 99 Mass., 209.

J. B. Cumming, for defendant, cited Code, §§3117, 3232; 11 *Ga.*, 159, 171; 16 *Ib.*, 49, 63; 9 *Ib.*, 430; 12 *Ib.*, 281, 285; 38 *Ib.*, 45, 49; 35 *Ib.*, 177, 179; 40 *Ib.*, 199, 204; Story's Eq., 694, 705, 795.

Bleckley, Justice.

The complainants filed their bill in March, 1877, and the cloud which they seek to dissipate or dry up had then waxed to the age of forty-one years and a month. It appeared in February, 1836, and was spread upon record in less than four months. It was already casting its shadow from thence when Nelson, the cloud-maker, selling to George Jones, Jr., in March, 1837, conveyed to him much of what had been previously conveyed to the Georgia Railroad. Generally, the older of two deeds from the same person to different grantees, covering the same premises, is the better. In ordinary legal meteorology, if either is mere vapor while the other is solid, it is the younger and not the elder which is among the clouds. Whether we look to the bill or to the evidence, there is no appearance of fraud in the deed of 1836. The most that can be said is, that Nelson

conveyed the same land twice, once to the Georgia Railroad, and then a part of it a second time to the Georgia Railroad, and the balance to Jones. There is no explanation of why this occurred; it is simply a mystery enveloped in the obscurity of time. No mere presumption is to be indulged against the good faith of either transaction, more especially as there are, not one, but two theories upon which they can be reconciled. The first is, that though the interval had been but little over a year, it is possible that the first purchase by, and the first conveyance to, the Georgia Railroad, had been forgotten, and that the second purchase by the Georgia Railroad was really a purchase of what already belonged to it. In that case, there would be a mistake, but not one for which the first deed ought to be set aside. The only correction which either law or equity would call for, would be the refunding by Nelson of the price received from the railroad on the second purchase, and the cancellation of the deed for which that price was paid. The second theory, which is much the more probable of the two, is, that the Georgia Railroad, finding that it needed only a way through the premises, conveyed back to Nelson, and then took from him the second deed, Nelson, on the same day, selling and conveying to Jones all the residue of the lot. The adoption of this theory would be as far as the former from justifying a cancellation of the deed of 1836. On the contrary, that deed would itself be a link in the chain of title to Jones, as well as a link in the chain to the Georgia Railroad. No court would cancel an elder deed because a younger one, required to complete the chain, was not recorded and could not be found.

It is, however, not indispensable that we should propound a theory on which all the three deeds from Nelson can be harmonized. Suppose they cannot be harmonized now after such a lapse of time, what is the consequence? A party aggrieved, or likely to be aggrieved, by an outstanding deed, may show that it could not, in good conscience, be enforced, and may have it canceled. The very reason

why equity will cancel it, as a cloud upon title, is that the proof to brand it can be made now, but perchance cannot be made hereafter. But suppose the party waits until the apprehended evil has already happened—until the evidence, if ever it existed, to expose the turpitude of the deed, has been swallowed up; until the day of knowledge has passed, and the night of ignorance or oblivion has come, what can a court of equity do? Nothing—simply nothing. These complainants have waited until, though they are still able to raise a mystery, they are utterly unable to solve it. Where is Nelson? Where is George Jones, Jr.? Where is J. Edgar Thompson? and where is C. B. Martin? Where, too, are Henry H. and William Cumming, and Hays Bowdry? When this old deed was executed and recorded, and perhaps for many years afterwards, these men could have enlightened a court and jury concerning it; and we need no other reminder of how much truth can perish in forty years, than the fact that the testimony of not one of them is found in the record of this case. The complainants urge that their title has come to a good and perfect ripeness by prescription. Very well, that renders it good at law, and the evidence of the prescription is but stronger instead of weaker as time advances; and so there is the less reason for equity to interfere. Who ever knew the adverse paper title to be called in and canceled, because prescription had rendered it impotent and unavailable? They also urge that both the younger deeds from Nelson bear the same date, were written by the same person, and attested by the same witnesses—one of them the chief engineer and the other the book-keeper of the Georgia Railroad. But these facts do not show, nor tend to show, that the prior deed ought to be canceled. There is no evidence that the draftsman or the witnesses knew of that deed, or that they did or said anything to induce Jones to make the purchase or pay his money. It was not their business to guard his contracts, and warn him against taking a bad or defective title. So far as the witnesses are concerned, they might have attested

the deed to Jones without knowing anything of its contents, or of its application to this particular land. Nothing is more common than for witnesses to attest the execution of a deed without reading it or hearing it read, or being aware of its subject-matter. The presumption ought to be, and is, that if it was their duty to make any disclosure or communication to Jones on the occasion, they made it. There is no evidence that they were silent. All that is certainly known as to the notice to Jones, or the want of notice, is that he purchased with constructive notice, the old deed having been duly recorded nine or ten months before. Whether or not he also had actual notice, is, like most of the other material facts, left in the dark. A further point urged by the complainants is, that the second deed to the Georgia Railroad recites that the lot in its entirety belonged to Nelson. There is no evidence that this recital was ever seen by Jones, or that it was known to him, or in any way influenced his action. Let it be conceded that the recital is true, and that, whether true or false, it binds the Georgia Railroad, what then? Its bearing is, not to destroy the old deed, but to suggest that after that deed was made and recorded, the Georgia Railroad conveyed the lot back to Nelson by a deed which is not now forthcoming. To make the papers tally with the recital, the thing wanted is not fewer deeds, but more—is not to strike out a link from the chain of title, but to insert a missing link. But if the recital binds the Georgia Railroad, why is not that sufficient to protect complainants against the old deed, and why should they seek to cancel it at this late day? With forty years possession of the premises, and this recital to stand upon, how can the old deed ever disturb them? Taking the showing which the complainants themselves make, they need no injunction to restrain the use of that deed, and no decree to cancel it. Their position is impregnable at law, and they are in no danger of losing the evidence on which their present strength depends. Time never crumbles prescriptive title,

but only solidifies it, converting, as it were, the loose sand into imperishable stone. But were the complainants less fortunate, did they really need the aid of equity, if their future security depended on canceling the deed of 1836, they make no case for cancellation. They show triumphantly that the deed has lost all its potency as a title at law adverse to theirs, but they fail to show that it has or ever had any equitable taint. It may be, and for aught that appears it is, as pure a deed as any of the three. If once pure, it was not rendered impure by a second purchase of a part of the same land by the Georgia Railroad, nor by a failure to assert it against Jones, or Mrs. Jones, or the complainants, the executors, until so late that its assertion would be fruitless. Going back to the original transactions concerning this land, it is by no means certain that the second purchase by the Georgia Railroad was not an oversight; and if it was an oversight, the deed now in question is the only one of the three by Nelson which ought ever to have been made. It is rather easier for a corporation to be the victim of a blunder of this sort, than for a natural person to be so victimized. The former has no mind or faculties of its own, and has to depend upon those of officers and agents. Its agents are sometimes numerous, and one may ignorantly repeat what another has already effectually done; and, with regard to timely discovery, there is the risk of carelessness and inattention, as well as the hazards resulting from a frequent change of agents— their withdrawal or dismissal, and a consequent cessation of all interest on their part in the affairs of the company. Unless the complainants could by evidence penetrate and dissolve the mystery which hangs over the three Nelson deeds, and show that the first has a moral canker, on account of which its legal vitality (now reduced it would seem to the very minimum of deed-life) ought to be violently extinguished, the doctrine of the "survival of the fittest" should be left to take its course. On the case made against the Georgia Railroad there is nothing higher

to bind its conscience than the ordinary rules of law; and this being so, there is nothing higher to bind its conduct. Let it do with the old deed whatever it legally can, for in this instance legality and morality are one.

The phraseology of the motion made to dismiss the bill may be criticised, and so perhaps may the time of the motion; but as neither the bill nor the evidence is good for any decree or judgment whatever on the line of injunction or cancellation, mere niceties of practice may be passed over. It was proper to dismiss the bill, not for the want of jurisdiction, but for the want of a state of facts which would entitle the complainants to the relief which they sought. There was very ample jurisdiction, but no occasion for its exercise.

Judgment affirmed.