PIERCE *et al.* v. MIDDLE GEORGIA LAND AND LUMBER COMPANY *et al.*

1. Where one dies intestate, leaving no debts, and there is no administration on his estate, all the heirs of such decedent may jointly maintain an action to cancel a deed of their ancestor, upon the ground that it is illegal and void, and is a cloud upon their title.

2. Where a petition contains prayers for relief appropriate to the allegations of fact, it should not be dismissed because of an inconsistent prayer. The proper practice is not to dismiss the petition as a whole, but to strike the inconsistent prayer.

3. In a petition to cancel deeds which are alleged to be a cloud on the plaintiff's title, all the parties to the deeds sought to be cancelled are proper parties to the suit.

4. The true owner of land out of possession must seasonably apply to a court of equity for the cancellation of a deed alleged to be a cloud on his title, under which the person in possession claims title, and of which claim the true owner has notice, or he will be barred by his laches. But equity follows the analogy of the law, and will not close her doors to the complaint of the true owner of land to cancel a deed constituting a cloud on his title, when the complaint is made within a less time than that in which prescription could have ripened, and where no special circumstances appear demanding an earlier application.

5. Some of the special demurrers were well taken, and others should have been overruled.

Argued February 12,—Decided July 21, 1908.

Equitable petition. Before Judge Felton. Taylor superior court. May 29, 1907.

E. C. Pierce and his nine children, on March 4, 1907, sued the executors of T. J. Marshall, Gorman & Huggins, and the Middle Georgia Land & Lumber Company, alleging, in brief, that Mary E. Pierce, the wife of E. C. Pierce, and the mother of his children,

died February 20, 1903, leaving no debts; that no administration has been granted on her estate, and that the petitioners compose all her heirs at law; that in 1886 she deeded to T. J. Marshall 500 acres of land for an expressed consideration of $150, the real consideration being the securing of a debt due by her husband to Marshall; that on November 7, 1888, she deeded to T. J. Marshall 100 acres of land for an expressed consideration of $168, the real consideration being the securing of a common-law fi. fa. against her husband in favor of John F. Lewis & Son, which Marshall had purchased and had assigned to him; that the debt originally due to Marshall was infected with usury, and that Marshall had exacted usury for carrying the debt represented by the fi. fa. purchased by him; that on October 5, 1903, T. J. Marshall gave a quitclaim deed to both parcels of land to Gorman & Huggins for an expressed consideration of $600, who thereafter went into possession and conveyed them to the Middle Georgia Land & Lumber Company, a corporation composed of Gorman & Huggins and one other person whose name plaintiffs did not know; that Gorman & Huggins and the Middle Georgia Land & Lumber Company took with full notice that the deeds from Mrs. Pierce were given as security for debt; that E. C. Pierce, after the execution of the two deeds from his wife to Marshall, had a tenant on the land, and that by agreement between Pierce and Marshall rents amounting to $400 were paid by this tenant to J. A. Steed, who paid the same over to Marshall as a credit on Pierce's indebtedness to Marshall of $318. There was no charge of the insolvency of any of the defendants. It was alleged that Gorman & Huggins and the Middle Georgia Land & Lumber Company had cut timber to the amount of $2,000 from the land, and were continuing to cut the same, and to use it for turpentine purposes, and that the land was of the value of $10,000. The prayers of the petition were: 1st, that the Middle Georgia Land & Lumber Company, Gorman & Huggins, and their agents and representatives be restrained and enjoined from trespassing upon said property, from operating a sawmill thereon, from cultivating the same, and from any way exercising any acts of ownership therein; 2d, that the plaintiffs have judgment against Brown Marshall, executor of the last will and testament of T. J. Marshall, for $10,000, with interest thereon; and that the deeds hereinbefore described as delivered to T. J. Marshall by Mary

E. Pierce, and the quitclaim deed delivered to Gorman & Huggins by T. J. Marshall, be surrendered into the registry of the court to be canceled. There was also a prayer for process. The petition was dismissed on demurrer, and the plaintiffs excepted.

*Jere M. Moore, Allen & Pottle,* and *W. E. Steed,* for plaintiffs. *Hardeman, Jones & Johnston* and *C. B. Marshall,* for defendants.

EVANS, P. J. (After stating the facts.)

1. The petition alleged that the legal title to the land was in Mary E. Pierce, and that her conveyances to T. J. Marshall were void, (1) because they were made to secure a debt of her husband, (2) because that debt had been paid, and (3) because the deeds were infected with usury. The deed of a wife to secure her husband's debt is absolutely void as to her and her privies. *Gross* v. *Whitely,* 128 *Ga.* 79 (57 S. E. 94). If Mrs. Pierce's deed was given to secure her husband's debt, she would not be under any obligation to pay the debt thereby secured; but if she did pay it, as alleged in the petition, this would afford an additional reason why her deed should be declared void. A court of equity will cancel an illegal or void deed which forms a cloud upon the true title. *Hollingshead* v. *McKenzie,* 8 *Ga.* 457; *McArthur* v. *Matthewson,* 67 *Ga.* 144; *Fulgham* v. *Pate,* 77 *Ga.* 454. These deeds of Mrs. Pierce operated to throw a cloud or suspicion on her title, and might have been vexatiously or injuriously used against her; and she had a right of action to have them canceled. Upon her death intestate and leaving no debts, where there was no administration on her estate, all of her heirs could unite in a petition having for its object the cancellation of these deeds as a cloud upon their title. *Kent* v. *Davis,* 89 *Ga.* 151 (15 S. E. 457); *Belt* v. *Lazenby,* 126 *Ga.* 775 (56 S. E. 81); *Hodges* v. *Wheeler,* 126 *Ga.* 848 (56 S. E. 76).

2-3. The demurrer raised the issue that the petition was multifarious, and contained a misjoinder of parties. The allegations of the petition were consistent and appropriate to the prayer for cancellation of the deeds, and for the writ of injunction to restrain the further cutting of timber, and the use thereof for turpentine purposes. The prayer for judgment for $10,000 against Marshall's executors looks to be inconsistent with the other prayers, but it is too indefinite and general in character to indicate that the purpose and scope of the petition is otherwise than to cancel deeds

which constitute a cloud upon the plaintiffs' title. A suitor should not be turned out of court for his much praying, but the inconsistent prayer should be stricken. *Kupferman* v. *McGehee,* 63 *Ga.* 250. It is argued in the brief that as the value of the land is stated at $10,000, and the prayer is to recover this precise sum, the prayer should be taken in connection with the allegation of the value of the land, and the petition construed as an effort to recover the value of the land; and that the plaintiffs could not have the deeds canceled and recover the land, and also have judgment for its value. There is nothing in the stating clauses of the petition indicating any intent by the plaintiffs to hold Marshall's executors accountable for the value of the land, and the coincidence of the amounts at which the land is valued, and for which judgment is prayed, is not sufficient to afford an inference of such intent. It is evident from a reading of the petition that there was no misjoinder of parties, and no elaboration of this point is necessary.

4. It is further urged on demurrer that as Mrs. Pierce lived more than 14 years after making her deeds to Marshall, and during this time never moved to set them aside, equity will not permit her heirs to assail Marshall's title to the land. It does not appear from the petition when Marshall took possession of the land, nor under what circumstances. It is alleged that after execution of the deeds to Marshall, E. C. Pierce, the husband of Mary E. Pierce, had a tenant on the property, and consented that one Steed should collect the rent and pay it to Marshall on her husband's indebtedness. The only other reference to the possession of the land is the allegation that Gorman & Huggins and the Lumber Company have been in possession of the land since October 5, 1903, a little less than four years before the institution of the suit. There is nothing, therefore, to indicate Marshall's possession prior to October 5, 1903. If defendants had desired more specific information on this point, they should have called for it by special demurrer. The owner of the legal title in possession may lie by till his possession is invaded, or his title is attacked, before taking steps to vindicate his right, and lapse of time forms no bar to a petition brought to remove a cloud or to quiet title by a plaintiff in possession. 18 Am. & Eng. Enc. L. (2d ed.) 124. But when a plaintiff is out of possession, he must seasonably apply to a court of

equity for cancellation of the alleged cloud on his title after notice of it, or he will be turned off, because of his laches. One of the reasons why a court of equity will lend its aid in the removal of a cloud from a title is that there is proof at hand to sustain the plaintiff's cause, which may not be had at a future time. *Jones* v. *Ga. R. Co.,* 62 *Ga.* 718. There is no limitation at law upon the right of the owner to institute an action to recover land to which he has title, but an adverse possessor may within seven years acquire a prescriptive title which would be superior to his title. Equity follows the analogy of the law, and a plaintiff's right to cancel a cloud on his title will not be denied him when he applies within seven years after the assertion of the void title which is apparently good, and there are no special circumstances demanding an earlier application. There being nothing in the petition to show that the plaintiffs or their ancestor had been out of possession of the land for any time anterior to October 5, 1903, we can not say as matter of law that they are in such laches as to be denied the relief they seek.

5. There were many special demurrers. One challenged the sufficiency of the allegations respecting usury. It was alleged that Marshall's deed was void because he exacted usury, demanding and contracting to receive 12 per cent. interest. It is not sought to recover back any sum paid in excess of the legal rate of interest. In pleading usury for the purpose of avoiding the deed it is unnecessary to set it out with all the particularity required in pleas of usury. *Carswell* v. *Hartridge,* 55 *Ga.* 412. The allegations were sufficient in this respect. Another special demurrer challenged the sufficiency of the allegations relating to the payment of the debt. These allegations were defective in omitting to state the time of payment or to allege sufficient reasons for inability to give the exact date of payment. The other special demurrers were without merit.

The court erred in dismissing the petition; and the judgment is reversed with direction that such action with respect to the special demurrers be taken as is indicated in this opinion.

*Judgment reversed, with direction. All the Justices concur.*