19106. TILLMAN et al. v. BYRD.

HAWKINS, Justice. On March 3, 1955, Jimmie McGuire Byrd filed in Thomas Superior Court her equitable petition against Benjamin Tillman and Beaurie Tillman, alleging substantially: that she is the daughter and sole surviving heir of Kansas McGuire and N. W. McGuire, both deceased; that Kansas McGuire died intestate a resident of Thomas County, Georgia, in June, 1953, and at the time of her death was seized of certain described property located in Thomas County; that, at the death of Kansas McGuire, the said property passed to plaintiff and her father, N. W. McGuire, who was then in life; that plaintiff executed a security deed to a named loan company in July, 1954, to secure the payment of $738, said deed conveying plaintiff's interest in the land described, a copy of the deed being attached to the petition as Exhibit A; that, on January 3, 1955, plaintiff owed a balance of $658 on the security deed, payments being in arrears and the loan company requesting payment; that, for several years prior to January, 1955, N. W. McGuire had been an invalid, was old and had deteriorated both in mind and body, his condition being such that he required constant attention, and that plaintiff cared for her father and paid his medical expenses; that plaintiff's husband had deserted her, and this fact coupled with the strain of the illness of her father had caused plaintiff great concern and had caused her to be weakened both physically and mentally; that defendants had been neighbors and friends of her family for some time; that defendants are intelligent and experienced in business, and there was and is a great disparity of mental capacity between plaintiff and defendants; that Benjamin Tillman became aware of the fact that plaintiff was in arrears with payments on the security deed held by the loan company, and advised her that he would take up said loan and allow plaintiff to repay him when she was able to do so; that thereafter defendant Benjamin Tillman carried plaintiff to the office of his named attorneys, where she signed an instrument prepared by his attorneys; that she was then both physically and mentally weak, worried about her father's condition, and did not comprehend what was being done; that she had full confidence that the papers she signed expressed her agreement with defendant Benjamin Tillman, to the effect that he would take up the loan and allow plaintiff to repay same at a later date; that thereafter the instrument prepared by defendants' attorneys was carried to the home of her father and defendants induced her father to sign said instrument, then and there informing her father that, unless he executed said instrument, the loan company would take said property; that at said time her father, N. W. McGuire, was aged, infirm, and weak both mentally and physically, and there was great disparity of mental ability between defendants and her father; that thereafter Benjamin Tillman

informed her that it would be necessary for her to turn her 1950 Ford automobile over to him so that it could be sold and the proceeds applied toward the lien of the loan company; that she was weak both mentally and physically, and relying on this defendant, she turned the car over to him; that said car was reasonably worth $500 at said time; that this defendant thereafter gave plaintiff $20, saying that was all said car brought upon sale; that, on or about February 14, 1955, Okie Wade, acting on behalf of plaintiff and her father contacted the defendants for the purpose of repaying defendants the money paid by them to the loan company; that Benjamin Tillman advised Wade that he had expended $240 of his own money in paying said loan, and he would deed said property back to plaintiff upon payment of this amount; that N. W. McGuire died intestate February 15, 1955, and any interest he may have had in the property passed to plaintiff; that, upon investigation made after defendant Benjamin Tillman stated that he would deed the property back to plaintiff, she first learned that the instrument prepared for her signature and that of N. W. McGuire by defendants' attorneys was a deed purporting to convey title of said property to defendants, a life estate being reserved therein to plaintiff and her father, a copy of said instrument being attached as Exhibit B; that defendants have now informed plaintiff that they expect to keep her property and will not reconvey same to her; that said property consists of a two-story residence and a store building, and is reasonably worth $8,000; that there was no consideration for the transfer of title to defendants other than the $240 which defendants claim to have paid on the loan, same being grossly inadequate; that, on March 2, 1955, plaintiff tendered to named attorneys of record for defendants $240, and same was refused; that plaintiff stands ready to repay to defendants the sums expended by them from their own funds in paying the loan company; that defendants fraudulently induced plaintiff and her father to execute the deed, copy of which is attached as · Exhibit B, leading them to believe same amounted only to defendants' assuming the loan held by the loan company, and defendants then and there purposed and intended to take advantage of their friendship with plaintiff and her father, and the weakened physical and mental condition of plaintiff and her father, to defraud them of the property; that plaintiff is in ill health, suffers from diabetes, and is physically unable to support herself; that the deed executed to defendants constitutes a cloud on petitioner's title to said property, and she is unable to use said property for security to raise needed funds for medical and other expenses; that the deed should be delivered up to be canceled; and that defendants are insolvent, and plaintiff has no adequate remedy at law. By amendment, plaintiff alleged that N. W. McGuire left no debts, and that there has been no administration of his estate. The prayers of the petition were for process; that equity take jurisdiction; that defendants be required to deliver up the deed executed to them by plaintiff; that same be canceled as a cloud on plaintiff's title; and for such other and further relief as may seem just and proper.

The exception here is to the overruling of the following grounds of demurrer: that the petition (1) sets forth no cause of action against defendants; (2) does not allege facts to authorize the relief prayed for; (3) does not allege any facts which show any fraud on the part of de-

fendants against plaintiff; (4) fails to show that plaintiff could not read the deed which she signed; fails to show that she did not read said deed; fails to show any facts which might excuse her from reading and signing said deed; (5) fails to allege any facts which show any relation of confidence between plaintiff and defendants which would excuse her from her acts alleged in the petition, and it fails to show any relation of confidence between her and defendants' named attorneys which would excuse her from any acts alleged in her petition; (6) sets forth no facts which show that said deed was not the true contract of N. W. McGuire fairly entered into, and shows no facts authorizing the cancellation of said deed so far as the interest of N. W. McGuire appears therein; and (7) fails to show that the deed shown as Exhibit B is a cloud on plaintiff's title.
*Held:*

1. "Where one dies intestate, leaving no debts, and there is no administration on his estate, all the heirs of such decedent may jointly maintain an action to cancel a deed of their ancestor, upon the ground that it is illegal and void, and is a cloud upon their title." *Pierce* v. *Middle Georgia Land &c. Co.,* 131 *Ga.* 99 (61 S. E. 1114). See also Code (Ann. Supp.) § 113-901; *Cleaveland* v. *LaGrange Banking & Trust Co.,* 187 *Ga.* 65, 71 (4) (200 S. E. 137).

2. While "a party to a contract who can read must read, or show a legal excuse for not doing so and that fraud which will relieve a party who can read must be such as prevents him from reading" (*Lewis* v. *Foy,* 189 *Ga.* 596, 598, 6 S. E. 2d 788), and "If a party, by reasonable diligence, could have had knowledge of the truth, equity shall not relieve" (Code § 37-211); yet "Relief may be granted even in cases of negligence by the complainant, if it appears that the other party has not been prejudiced thereby." Code § 37-212.

3. "Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence." Code § 37-706. "Great inadequacy of consideration, joined with great disparity of mental ability in contracting a bargain, may justify equity in setting aside a sale or other contract." Code § 37-710. "Under the latter principle, a deed may be set aside in equity, on proof of the two elements stated, 'without proof of anything else' as to fraud." *Stow* v. *Hargrove,* 203 *Ga.* 735 (1) (48 S. E. 2d 454). See also *Fuller* v. *Stone,* 207 *Ga.* 355 (1) (61 S. E. 2d 467). "The question of mental capacity to make a deed is a question of fact to be determined by the jury." *Jones* v. *Hogans,* 197 *Ga.* 404, 410 (4) (29 S. E. 2d 568).

4. Applying the foregoing rulings to the allegations of the petition, it stated a cause of action, and the trial court did not err in overruling the demurrer thereto.

*Judgment affirmed. All the Justices concur.*

ARGUED SEPTEMBER 14, 1955—DECIDED OCTOBER 13, 1955.

*Jesse J. Gainey,* for plaintiffs in error.

*Forester & Calhoun,* contra.