## 35930. PEARCE v. SOUTHERN GUARANTY INSURANCE COMPANY et al.

HILL, Justice.

Pursuant to our Rule 36 (Code Ann. § 24-4536, effective August 1, 1979), the United States Court of Appeals, Fifth Circuit, has certified the questions set forth below based on the following facts (see Southern Guaranty Ins. Co. v. Pearce, 607 F2d 146, 147-148 (5th Cir. 1979)):

### "STATEMENT OF THE FACTS

"Melvin W. Smith, a Georgia resident, hereinafter called 'Smith', made application to Southern Guaranty Insurance Company, Appellee, hereinafter called 'Southern Guaranty', on October 17, 1975, for automobile liability insurance. The application was made through Hendrix Insurance Agency in Phenix City, Alabama, and answers made to and signed in the presence of Donald Wayne Hendrix of that agency. The application was for basic third-party liability insurance and for basic personal injury protection benefits, or no-fault coverage, offered only to Georgia residents. The policy was issued providing for such benefits

on October 21, 1975, and mailed to Smith at the Georgia address listed in his application.

"Smith was involved in an automobile accident in Columbus, Georgia on November 29, 1975, and as a result of the collision, he and a passenger in his automobile were killed and the occupants of the other vehicle involved each contended they sustained personal injuries. William F. Pearce, Jr. was appointed Administrator of Smith's estate. . .

"The application for the policy contained the question, 'Has any driver had a violation or an accident in the past three years?' In response to this question, Smith answered, 'No'. It was subsequently determined that Smith within the three year period prior to October 17, 1975 (the date of the application) had four traffic violations. The fact of any of the violations was not known by any agent or representative of Southern Guaranty either at the time of the application or at the time of the issuance and mailing of the policy. The insurance policy issued to Smith originally covered a 1965 Ford Fairlane automobile which was replaced by a 1966 Ford Mustang automobile on November 28, 1975, and Smith was driving the 1966 vehicle at the time of the accident.

"By writing dated December 31, 1975, Southern Guaranty gave notice of cancellation. On April 6, 1976, suit was filed against Smith's Administrator by one of the occupants of the other vehicle; a nonwaiver agreement was executed by and between Smith's Administrator and Southern Guaranty Insurance Company on April 22, 1976; and on April 23, 1976, Southern Guaranty filed the action for declaratory judgment against Smith's Administrator (Appellant herein), all occupants of the other vehicle involved, the U.M. carrier of one of such occupants, and the parents of Smith and the other occupant of Smith's vehicle (who had filed PIP claims with Southern Guaranty). Subsequently, motion for summary judgment was filed by Southern Guaranty. The affidavits of the issuing agent and insurance company representative submitted therewith state that Southern Guaranty would not have issued the policy if the true facts had been known with respect to the traffic violations and that such facts were not known at the time of the issuance of the policy.

"Southern Guaranty contended that Ga. Code Ann. § 56-2409 was controlling and that the insurance policy issued under the facts of this case was void ab initio and that the insurance company was relieved of all liability in connection with the policy.

"Smith's Administrator contended that the motor vehicle identified in the policy and its replacement vehicle were required to be registered in Georgia; that the 1974 Georgia Motor Vehicle Reparations Act (Chapter 56-34B of the Georgia Code Annotated)

which became effective on March 1, 1975, precluded the assertion of the right established by Ga. Code Ann. § 56-2409, contending that this 1974 act referred to as the 'No-Fault Act' makes automobile liability insurance compulsory in Georgia; and that a policy once issued cannot be cancelled or voided retrospectively after the happening of some event which would otherwise create liability on the part of the insurer.

"Southern Guaranty responded to that contention by contending that since the policy in this case was not issued under an 'assigned risk plan' and no certificate was issued by the insurer certifying that Smith had any coverage, the policy involved was a voluntary one and therefore subject to rescission as provided by Ga. Code Ann. § 56-2409. Southern Guaranty further contended that, if the 1974 No-Fault Act were to be construed as requiring compulsory third-party liability insurance in any stated amount prior to any accident or as repealing Ga. Code Ann. § 56-2409, such constructions would raise constitutional issues as to those portions of the No-Fault Act which allegedly authorized any such construction. An appeal was taken to the United States Court of Appeals for the Fifth Circuit contending the propriety of the summary judgment granted in favor of Southern Guaranty.

## "QUESTIONS FOR THE SUPREME COURT OF GEORGIA

"After the effective date of the Georgia No-Fault Act (Georgia Motor Vehicle Reparations Act, Georgia Laws 1974, pp. 113, et seq., Ga. Code Ann., Chapter 56-34B), can an automobile insurance policy providing basic third-party liabilty insurance and basic personal injury protection benefits, issued to a Georgia resident, be voided ab initio based upon misrepresentations made in the application for the insurance, as provided by Ga. Code Ann. § 56-2409, after an automobile accident giving rise to a claimed loss?

"If the answer to the above question is in the affirmative, were the misrepresentations involved in this case sufficient to void this policy?

"The entire record in this case, together with copies of the briefs of the parties and agreed certification in this Court, are transmitted herewith." (Southern Guaranty Ins. Co. v. Pearce, 607 F2d 146, 147-148 (5th Cir. 1979)).

Code Ann. § 56-2409, cited above, and set forth in the footnote,[1] does not specify whether it is to be given retrospective or prospective effect. In some cases it has in fact been given retrospec-

---

[1] Code Ann. § 56-2409: "All statements and descriptions in any application for an

tive effect without discussion of this issue, with the result that the insurance policy was voided ab initio.[2] As the Fifth Circuit Court of Appeals noted (607 F2d at 146), and as the parties acknowledge, there is no controlling precedent in the decisions of this court.

It is important to remember that the insurance policy in issue here was issued on October 21, 1975, and is subject to applicable laws in effect at that time. See *Davis v. Reserve Ins. Co.,* 220 Ga. 335, 337 (138 SE2d 657) (1964); *State Farm Mut. Auto Ins. Co. v. Landskroener,* 150 Ga. App. 308, 309 (257 SE2d 376) (1979), Code Ann. § 56-2418 (Ga. L. 1960, pp. 289, 666); Code Ann. § 56-3405b (a) (Ga. L. 1974, pp. 113, 118).

The Georgia Motor Vehicle Accident Reparations Act was enacted in 1974 (Ga. L. 1974, p. 113) and became fully effective on March 1, 1975 (some of its sections became effective earlier). That act and its 1975 amendments are applicable to the insurance policy in issue in this case. That act is popularly referred to as the "no-fault act." Perhaps not as popularly, that act also provided for compulsory insurance in Georgia in section 3 (Code Ann. § 56-3403b) as follows: "No owner of a motor vehicle required to be registered in this State, or any other person, other than a self-insurer as defined in this Chapter, shall operate or authorize any other person to operate such motor vehicle unless the owner has insurance on such vehicle providing the following minimum coverage: (a) motor vehicle liability insurance equivalent to that required as evidence of security for bodily injury and property damage liability under the motor vehicle safety responsibility laws of this state..." (Subsection (b) provides for compulsory no-fault insurance.)

---

insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:

"(1) Fraudulent; or

"(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

"(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount, or at the premium rate as applied for, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise." (Ga. L. 1960, pp. 289, 660.)

[2]See *Morris v. State Farm &c. Ins. Co.,* 143 Ga. App. 617 (239 SE2d 187) (1977); see also *Peek v. Southern Guaranty Ins. Co.,* 142 Ga. App. 671 (5) (236 SE2d 767) (1977), reversed on certiorari, *Peek v. Southern Guaranty Ins. Co.,* 240 Ga. 498 (241 SE2d 210) (1978).

The provision (subsection (a) quoted above) as to "motor vehicle liability insurance equivalent to that required as evidence of security for bodily injury and property damage liability under the motor vehicle safety responsibility laws of this State" refers to our Motor Vehicle Safety Responsibility Act, now Code Ann. Title 68C (Ga. L. 1977, p. 1014), *Auto-Owners Ins. Co v. Safeco Ins. Co.*, 245 Ga. 558 (1) (1980); *Standard Guaranty Ins. Co. v. Davis*, 145 Ga. App. 147, 148 (243 SE2d 531) (1978), formerly Code Ann. Title 92A-6 (Ga. L. 1951, p. 565, as amended). Former Code Ann. § 92A-605 (c) relieved a person from furnishing the security required by former Code Ann. § 92A-605 (a) if the owner or operator of the vehicle had an automobile liability policy on the vehicle involved in an accident in amounts not less than $10,000/$20,000/$5,000 (Ga. L. 1957, pp. 124, 125; 1958, p. 694).

Smith applied for and received from Southern Guaranty basic third-party liability insurance ($10,000/$20,000/$5,000) as well as basic personal injury protection benefits (no-fault). Southern Guaranty, an insurance company licensed to do business in this state, urges that the reference in Code Ann. § 56-3403b (a) to "the motor vehicle safety responsibility laws of this State" is so vague, ambiguous and uncertain that it cannot ascertain the law referred to and the minimum coverages required. Although we do not find that to be so, *Auto-Owners Ins. Co. v. Safeco Ins. Co.*, supra, we note that the Southern Guaranty policy issued to Smith complied with the minimums set forth in our motor vehicle safety responsibility law, former Code Ann. § 92A-605 (c).

In any event, Southern Guaranty issued Smith a policy under our Motor Vehicle Accident Reparations Act (Ga. Code Ann. Ch. 56-34B; Ga. L. 1974, p. 113) providing third party liability insurance and no-fault benefits. Section 11 of that act provided for a mandatory reduction of rates for bodily injury coverage. Section 12 of that act (Ga. L. 1974, pp. 112, 123, as amended, Ga. L. 1975, pp. 516, 517) at that time provided that "(a) From and after January 1, 1975, no motor vehicle shall be licensed by the State of Georgia until the owner has furnished satisfactory proof to the licensing authorities in accordance with rules and regulations promulgated by the Commissioner of Public Safety that there is in effect the minimum insurance coverage required by this Act, or an approved self-insurance plan. The insurer, within five (5) days after the effective date of a cancellation of such coverage, shall notify the Department of Public Safety in writing of the cancellation. (b) In cases in which the minimum insurance required by this Act is cancelled by the insurer, upon receipt of notification of such cancellation the Department of Public Safety shall send a form to

the owner of such motor vehicle that the Department has been informed of the fact of such cancellation. Upon receipt of such form [from] the Department of Public Safety it shall be the duty of the owner of such motor vehicle, on such form provided by the Department of Public Safety, to notify the Department as to whether he has obtained the minimum insurance coverage required by this Act, indicating the insurance company with which any coverage has been obtained and the policy number or binder number." (Matter in brackets added.) As can be seen, the cancellation provisions of Section 12 are applicable to both the third-party liability and no-fault coverage required by Code Ann. § 56-3403b, quoted above (which refers to the "minimum coverage" as being both third party liability insurance and no-fault).

Section 12 (a), quoted above, does not allow cancellation to be retrospective. It requires the insurer to notify the Department of Public Safety of the cancellation "within five days after the *effective date* of cancellation." (Emphasis supplied.) In the case before us, the notice of cancellation to the insured was dated December 31, 1975. If cancellation were retrospective to the date of issuance of the policy, October 21, 1975, then in order for the insurer to comply with section 12, notice of cancellation would have had to have been given by the insurer to the Department not later than October 26, 1975.

Moreover, the insurer understood section 12 as we do. Its notice dated December 31, 1975, contained a *cancellation date and time* —February 1, 1976, at 12:01 a.m.—and stated that "the policy will be cancelled . . . upon the date and time shown above . . ." Hence the insurer's notice of cancellation stated that it was prospective rather than retrospective.

It appears likely that the insurer gave prospective notice of cancellation in order to give the 30 days notice to the insured required by Code Ann. § 56-2430.1(B) (Ga. L. 1975, pp. 1242, 1243). Code Ann. § 56-2430.1 applies to those portions of automobile policies relating to bodily injury and property damage liability as well as medical payments, physical damage and uninsured motorists coverage. Subsection (A) allows cancellation under some if not all of the conditions specified in Code Ann. § 56-2409, supra.[3] Subsection (B) requires that notice of cancellation be given the insured "at least 30 days prior to the *effective date* of cancellation" (except that 10 days notice will suffice in case of nonpayment of

---

[3]In view of the conclusion reached below, we do not here decide whether Code Ann. § 56-2409 continues to be applicable to those automobile policies covered by Code Ann. § 56-2430.1. See *Peek v. Southern Guaranty Ins. Co.,* supra, fn. 1.

premium). See also Code Ann. § 56-2430 (Ga. L. 1975, p. 1242). The provisions of our law cited above, Section 12 of Ga. L. 1974, pp. 113, 123, as amended by Ga. L. 1975, pp. 516, 517; Ga. L. 1975, pp. 1242, 1243, compel us to the conclusion that an automobile insurance policy providing basic third party liability insurance and basic personal injury protection benefits (no-fault) issued pursuant to Georgia law cannot be voided retrospectively under Code Ann. § 56-2409. We therefore answer the first certified question in the negative and need not reach the second question.

*First Certified Question Answered in the Negative; Second Question Not Decided. All the Justices concur.*

ARGUED FEBRUARY 11, 1980 — DECIDED MAY 27, 1980 — REHEARING DENIED JUNE 17, 1980.

*Hatcher, Stubbs, Land, Hollis & Rothschild, William B. Hardegree,* for appellant.
*Page, Scrantom, Harris, McGlamry & Chapman, W. G. Scrantom, Jr., Max R. McGlamry,* for appellees.