60016, 60017. SENTRY INDEMNITY COMPANY v. SHARIF; and vice versa.

SMITH, Judge.

Appellant Sharif brought an action seeking actual and punitive damages for appellant's alleged bad faith refusal to pay a claim. The claim arose out of an automobile collision between appellee's son, Mohammed, and a third party. The collision occurred during the period covered by a binder of insurance. At trial, appellant moved for a directed verdict on all issues, its primary contention being that material misrepresentations relating to appellee's son's driving record rendered any contract with appellant void ab initio. See Code § 56-2409. However, the trial court granted appellant's motion solely with respect to punitive damages. The jury awarded appellee $841.29 actual damages, a $210.32 "penalty" charged against the insurer and $1,875.00 in attorney fees. See Code § 56-1206. Appellant brings this appeal, asserting, inter alia, that the trial court erred in denying its motion for directed verdict. Cross-appellant (appellee in the main action) appeals the trial court's direction of a verdict as to punitive damages. On the main appeal, we affirm on condition; otherwise reversed. On the cross-appeal, we affirm.

1. The holding of the Georgia Supreme Court in the recent case of *Pearce v. Sou. Guaranty Ins. Co.,* 246 Ga. 33 (268 SE2d 623) (1980) controls the issues raised in appellant's first enumeration of error. In *Pearce,* 35, supra the Fifth Circuit Court of Appeals, pursuant to

Supreme Court Rule 36 (Code Ann. § 24-4536), certified the following question to the Georgia Supreme Court: " 'After the effective date of the Georgia No-Fault Act (Georgia Motor Vehicle Reparations Act, Georgia Laws 1974, pp. 113, et seq., Ga. Code Ann., Chapter 56-34B), can an automobile insurance policy providing basic third-party liability insurance and basic personal injury benefits, issued to a Georgia resident, be voided ab initio based upon misrepresentations made in the application for the insurance, as provided by Ga. Code Ann. § 56-2409, after an automobile accident giving rise to a claimed loss?' " Southern Guaranty Insurance Co. v. Pearce, 607 F2d 146, 147-148 (5th Cir. 1979). The Georgia Supreme Court answered in the negative. *Pearce v. Sou. Guaranty Ins. Co.,* supra.

We note that, in *Pearce,* the formal insurance policy had been issued prior to the collision, whereas, in the case at bar, appellee had only a binder at the time of the collision. However, this factual dissimilarity does not render the holding in *Pearce* inapplicable to the instant case. The binder was a contract of insurance. See *Cincinnati Ins. Co. v. Stuart,* 139 Ga. App. 80, 81-82 (227 SE2d 771) (1976). Moreover, the rationale employed by the court in *Pearce* would apply to all insurance contracts providing applicable coverage regardless of whether such coverage exists by formal policy or by binder. See Ga. L. 1974, pp. 113, 123 as amended (Code Ann. § 56-3412b).

As we are bound by the Supreme Court's holding in *Pearce,* we must hold that the defense afforded by Code § 56-2409 is unavailable to appellant.

2. Appellee is not entitled to punitive damages and attorney fees pursuant to Code § 56-1206. "The proper rule is that the judgment should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense which vindicates the good faith of the insurer." *Colonial Life & Acc. Ins. Co. v. McClain,* 243 Ga. 263, 265 (253 SE2d 745) (1979); *State Farm Fire & Cas. Co. v. Mills Plumbing Co.,* 152 Ga. App. 531, 538 (263 SE2d 270) (1979). Appellant's refusal to pay appellee's claim preceded the Supreme Court's ruling in *Pearce v. Sou. Guaranty Ins. Co.,* supra. In view of the misrepresentations contained in the application for insurance, we find, as a matter of law, that there was a reasonable defense which vindicates the good faith of the insurer. *Interstate Life & Acc. Ins. Co. v. Williamson,* 220 Ga. 323 (138 SE2d 668) (1964). "The judgment is therefore affirmed on condition that the plaintiff write off the . . . penalty and attorney fees; otherwise reversed." *Ga. Farm Bureau Mut. Ins. Co. v. Troupe,* 154 Ga. App. 108, 110 (267 SE2d 834) (1980).

3. The remaining enumerations of error presented in the main

appeal are either without merit or rendered moot by our holdings in Divisions 1 and 2 of this opinion.

4. Even assuming, as cross-appellant contends, that punitive damages in addition to the 25% penalty allowable under Code § 56-1206 may be recovered in tort, there is no evidence of any tortious conduct on the part of the insurer in this case. Thus, on the cross-appeal, we affirm.

*Judgment affirmed on condition; otherwise reversed on main appeal. Judgment affirmed on cross-appeal. Quillian, P. J., Mc-Murray, P. J., and Carley, J., concur. Deen, C. J., concurs specially. Shulman, Banke, Birdsong and Sognier, JJ., dissent.*

ARGUED JUNE 2, 1980 — DECIDED DECEMBER 5, 1980 — REHEARINGS DENIED DECEMBER 19, 1980 — 

*Richard B. Eason, Jr., Carolyn J. Kennedy,* for appellant.
*Thomas B. Murphy, Jack F. Witcher,* for appellee.

DEEN, Chief Judge, concurring specially.

Sadique M. Sharif filed an application for automobile insurance. His son, Mohammed A. Sharif, a student, was listed on the application. There appears to be no limitation of authority of the agent on the application for insurance. The jury returned a verdict for the appellee Sharif. The issue in this case is whether or not misrepresentations were made as to answers provided by the applicant for insurance.

"Absent a clear and unequivocal limitation on the authority of an agent of an insurance company, and absent fraud and collusion between the agent and the prospective insured, the actual knowledge of the agent of facts amounting to innocent misrepresentations in the application for insurance is imputed to the insurer, and the insurer will be estopped to assert that it would not have issued the policy if it had knowledge of the true facts." *Allstate Ins. Co. v. Anderson,* 121 Ga. App. 582 (2) (174 SE2d 591) (1970). See also *Reserve Life Ins. Co. v. Meeks,* 121 Ga. App. 592 (174 SE2d 585) (1970); *Chester v. State Farm Mut. Auto. Ins. Co.,* 121 Ga. App. 599 (174 SE2d 582) (1970).

The insurance agent filled out the form application based on information provided by Sharif. Sharif contends that the agent asked only whether his son Mohammed had any violations, to which he responded "no." Without a limitation of authority of the agent stated in the application the act of the agent became the act of the insurer. The jury could find that the agent who was acting for the insurance company waived any other questions as to violations by any of the

other family members other than Mohammed.

The jury returned a verdict in favor of the appellee Sharif, and we are bound to construe the evidence in favor of supporting the verdict. Therefore, I would affirm.

BIRDSONG, Judge, dissenting.

The issue in this case before a jury was whether appellee Sharif, in filing application for automobile insurance with the appellant Sentry Indemnity Co. made material misrepresentations of fact which, pursuant to Code Ann. § 56-2409, would prevent a recovery under the policy or coverage. I would rule the trial court erred in refusing to direct the verdict in favor of the appellant.

1. I disagree with the majority's conclusion that this case is controlled by the recent decision in *Pearce v. Southern Guaranty Ins. Co.,* 246 Ga. 33 (268 SE2d 623).

The Supreme Court, after giving its rationale concluded "that an automobile insurance policy providing basic third party liability insurance and basic [no fault] benefits . . . cannot be voided retrospectively under Code Ann. § 56-2409."

From legal antiquity, it has always been the law of contracts, generally, that a contract procured by fraud or wilful misrepresentations of material facts is voidable at the instance of the defrauded party (Code Ann. § 20-502; § 20-906). *Gibson v. Alford,* 161 Ga. 672, 685-686 (132 SE 442), and cases cited; *Life & Cas. Ins. Co. v. Davis,* 62 Ga. App. 832, 836 (10 SE2d 129). In the insurance code, at Code Ann. § 56-2409, it is provided that "[m]isrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless: (1) Fraudulent; or (2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or (3) The insurer in good faith would either not have issued a policy or contract . . . in as large an amount, or at a premium rate as applied for . . . if the true facts had been known to the insurer. . ." Under this statute, the insurance policy which was procured by fraud or misrepresentation of a material fact, which was material to the insurer's acceptance or degree of risk, is voidable at the election of the insurer. *McGhee v. Independent Life & Acc. Ins. Co.,* 146 Ga. App. 310, 311 (246 SE2d 349); and see *United Family Life Ins. Co. v. Shirley,* 242 Ga. 235, 238 (248 SE2d 635).

Under some of the precursors to Code Ann. § 56-2409, the policy procured by material fraud which changed the nature of the risk was not merely voidable, but *void.* This principle was firmly stated in at least three separate insurance statutes. *Preston v. National Life & Acc. Ins. Co.,* 196 Ga. 217, 221, 226-229 (26 SE2d 439). See also *Life &*

*Cas. Ins. Co. v. Davis,* supra, p. 835.

In *Pearce,* supra, it was proposed to the Supreme Court, and agreed to by the court, that automobile insurance policies providing basic third party liability and no-fault coverage can no longer be avoided after an injury has occurred on the basis of such risk-changing fraud or misrepresentation in their inducement, because the Georgia No-Fault Act (Georgia Motor Vehicle Accident Reparations Act, Chapter 56-34B) at Code Ann. § 56-3412b (a) requires an insurer who cancels insurance required by the chapter (no-fault and liability; Code Ann. § 56-3403b) to notify the Department of Public Safety of such cancellation within five days after the effective date of the cancellation. The reasoning of *Pearce* is that, therefore, no policy is cancelled unless the Department of Public Safety has had proper notice of it, which can logically not occur "retrospectively" so as to avoid the policy from its inception under Code Ann. § 56-2409.

The underlying — and only — purpose of Code Ann. § 56-3412b is to provide notice and proof of insurance to the Department of Public Safety and to provide sanctions against the *motor vehicle owner* who does not prove insurance. When policies are *cancelled* (i. e., when extant, viable policies are rescinded) the Department of Public Safety must have notice of the same. Explicit penalties enforceable by the Department of Public Safety are provided in Code Ann. § 56-3412b against the *car owner* who fails to comply with the requirements as to proof of insurance. No corollary penalty is provided against the *insurer* who fails to send such notice to the Department of Public Safety, although at Code Ann. § 56-9915.2 it is provided that ". . . any person who knowingly authorizes another to operate a motor vehicle without effective insurance thereon . . . shall be guilty of a misdemeanor. . ."

It seems that the main objective of *Pearce* is to protect innocent third parties. This objective is surely laudable. Moreover, I do not doubt that, as pointed out in *Pearce,* the Georgia No-Fault law fully intends to make liability insurance (and no-fault) compulsory. However, I do not believe this result ought to be reached by abolishing Code Ann. § 56-2409 through the employment of a purely technical statute which, in my opinion, was designed simply to enable the Department of Public Safety to keep tabs on who has insurance and who does not. Whether insurance companies shall be *guarantors* of insurance instead of mere insurers under contract, and whether the legislature, by enacting Code Ann. § 56-3412b of the No-Fault Act, intended to abolish Code Ann. § 56-2409, and centuries of common law, are matters that ought to be addressed by the legislature.

A too-generous application of *Pearce* will compel private

insurance companies to become the guarantors of insurance coverage. It will encourage fraud, and *reward the defrauder.* Naturally, as the risk increases unbounded, so will the premiums that the general public must pay. More likely, however, it will utterly defeat the ultimate purpose of the statutory provisions which make liability and no-fault insurance compulsory, since rather than issue policies or even binders, on the basis of an applicant's representations, the insurers will tend, I think, to issue nothing at all until thorough investigations can be made of all applicants. I simply do not believe the legislature or the Supreme Court intended such far-reaching results to arise from a construction of Code Ann. § 56-3412b.

We are bound by *Pearce,* but I do not believe it is applicable to this case. *Pearce* was a case where the insurer sought declaratory judgment that it was not liable to the third party because of the fraud or misrepresentations of the insured. The Supreme Court held that the company was liable to the unsuspecting third party, who had no part in the fraudulent or misrepresented procurement of insurance by the "owner."

In this case the policy owner, who made the misrepresentations, sued the insurance company to compel payment to *himself* for the claim made against him by the third party. No liability to the third party has been established, and no payment has been made to the third party by the owner. While the insurance company may be liable to the third party under *Pearce,* it is on no account liable to the policy owner on behalf of the third party. If we protect the innocent third party under *Pearce,* nevertheless as between the insurance company and the policy "owner" who obtained coverage by fraud or misrepresentations, the insurance company may have an action over against the "owner" for any sums it is compelled to pay a third party by reason of the "owner's" misrepresentations. Hence, it can have no obligation to pay the *"owner"* for the claim of the third party.

Accordingly, I believe *Pearce* does not control a case where the owner seeks for himself payment of a claim on behalf of a third party.

I also disagree with the majority that the decision in *Pearce* applies to binders of insurance as well as to policies of insurance; and since in this case a binder was issued on the basis of misrepresentations made by the appellee, the company should be entitled to avoid its operation under Code Ann. § 56-2409.

I would reverse the judgment below and render judgment for the appellant insurance company.

2. The undisputed evidence shows that the appellee Sharif

submitted an application for insurance which responded "no" to the question, "Has any member of [your] household in the past five years been convicted of or forfeited bail for any traffic violation, criminal or civil offense, or been involved in a traffic accident?" The insurance agent filled out the form application while taking information from Sharif, but *Sharif signed the form under a printed declaration that the facts stated were correct.* Sharif contended that the agent asked him only whether his son had had any violations, to which he responded "no." In fact, the family members had been involved in several automobile incidents, including violations and accidents, within the five years previous to the date of application.

Sharif, a native of Afghanistan, stated that he has been in this country since 1968 and is now a United States citizen; he has owned several cars and carried several policies of insurance; he was aware that premium cost may be affected by or may increase with the number and type of violations and accidents; he is a medical technician, is educated, can read and is conversant in English. Sharif did not deny the falseness of the "no" answer; nor was there alleged any fraud against the agent who filled in the application from the answers given by Sharif. He contended, however, that he did not understand the questions put to him by the agent with regard to "dates" and "violations" because (although he has been in this country 12 years) he thinks in Persian and because his calendar is Middle Eastern; and his error in understanding dates as he said, was "just an error of computation of the dates from exchanging from one to the other." He testified variously that he did not read the application to be sure it was correct when he signed it, or if he did read it, he did not understand the question concerning violations and accidents within the past five years; or that he did not remember reading that question because it was totally confusing to him, and being a medical technician, he read only his name, his son's name, and the vehicle identification number.

The appellant's witnesses testified that they would not have accepted the application had they known the truth, or that if the application had been accepted the truth concerning Sharif's automobile history would have affected the premium amount. Appellee did not refute this testimony.

The direction of a verdict is proper where there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. Code Ann. § 81A-150 (a); *Lanier Petroleum v. Hyde,* 144 Ga. App. 441, 442 (241 SE2d 62). Quite aside from the fact that Sharif's testimony is equivocal, inconclusive and ambiguous, and should thus be judged against him (see *Johnson v. Curenton,* 127 Ga. App. 687,

690 (195 SE2d 279)), there is no conflict in the evidence in this case that misrepresentations, omissions and incorrect statements were made; that they were material to the acceptance of the risk by the insurer and that the insurer either would not have issued the policy or accepted the application or would not have issued it at the premium rate as applied for if the true facts had been known to the insurer as required by the policy application, and the insured did not show otherwise. Code Ann. § 56-2409.

No fraud or other legal excuse is or can be asserted by Sharif under this evidence. He does not allege any falsification by the agent of his application or of the information he gave and verified when he signed the application. While there might otherwise have been an issue whether the misinformation was induced by the agent who may have misstated the questions to Sharif, the prevailing fact is that Sharif signed and verified the application under a printed declaration that all facts therein were true and correct. The undisputed evidence shows that the insured could read and write; that he could have read the application or, as he equivocally says, did read it; that he signed it; that nothing was said or done by the agent of the company to prevent him from reading the application, and no fraud perpetrated on him to induce him to sign the application. In these circumstances the plaintiff is charged with the misrepresentations and the knowledge of them. It is very well settled that one who can read must read, and no advantage can be taken of the failure to do so without legal excuse, nor can there be any question that as a matter of law the misrepresentations were Sharif's and chargeable to him. See *Musgrove v. Musgrove,* 213 Ga. 610, 612 (100 SE2d 577); *Tillman v. Byrd,* 211 Ga. 918, 920 (89 SE2d 479); *Stokes v. Humphries,* 152 Ga. 621, 624-625 (111 SE 36); *Life & Cas. Ins. Co. v. Davis,* supra; *Miller v. Quaker Savings Assn.,* 53 Ga. App. 703, 706 (186 SE 885); *Morgan v. Denton,* 28 Ga. App. 88, 89 (110 SE 328). The appellant Sentry was entitled to a directed verdict in the case. *Sentry Indemnity Co. v. Brady,* 153 Ga. App. 168 (264 SE2d 702); *Jefferson Standard Life Ins. Co. v. Bridges,* 147 Ga. App. 5 (248 SE2d 5); *Life & Cas. Ins. Co. v. Davis,* supra. Denial of it being in our opinion error, we would reverse the judgment below.

I respectfully dissent. I am authorized to state that Judge Shulman and Judge Sognier, join in this dissent.

ON MOTION FOR REHEARING.

*Motion for rehearing denied. Deen, C. J., Quillian, P. J., McMurray, P. J., Smith and Carley, JJ., concur. Shulman, Banke, Birdsong and Sognier, JJ., dissent.*

SMITH, Judge.

Appellant presents three basic arguments in its motion for rehearing. First, appellant contends that "[t]he $841.29 actual damages awarded by the jury were never incurred by Appellee." This contention was not raised by appellant in connection with its enumeration of error addressing the denial of its motion for directed verdict and has not otherwise been properly presented for review. "As this contention is now raised for the first time, it comes too late." *Leake v. City of Atlanta,* 149 Ga. App. 305 (254 SE2d 462) (1979).

Appellant also contends that *Pearce v. Southern Guaranty Ins. Co.,* 246 Ga. 33 (268 SE2d 623) (1980) "was misapplied in this case." Appellant apparently believes that the holding in *Pearce* is applicable only where the plaintiff is a third party. However, *Pearce* contains no such restriction, nor is one implicit in the court's reasoning. Notwithstanding appellant's contention that "[t]he Supreme Court reached the right result for the wrong reason in *Pearce,*" we are bound by what the Supreme Court has expressly held — "cancellation of an automobile insurance policy providing basic third party liability insurance and basic personal injury protection benefits (no fault) issued pursuant to Georgia law cannot be voided retrospectively under Code Ann. § 56-2409." Id. at 39.

Finally, the appellant argues that "*Pearce* has a disastrous effect on insurance contract law and the insurance industry generally." We can appreciate these concerns. However, in view of the Supreme Court's pronouncement in *Pearce,* we can do no more.

BIRDSONG, Judge.

I would grant the appellant's motion for rehearing for the reasons given in my dissent in the case. While it is true that as the majority says on motion for rehearing the appellant did not, in the proceedings below, raise the point that the claimant Sharif had never incurred an actual loss or liability with regard to the injured third party, nevertheless, that is the fact of the case and that is what removes it from the operation of *Pearce,* supra, as we said in our dissent. The Supreme Court's decision in *Pearce,* supra, which the majority here held precludes the insurer from avoiding liability based on Sharif's misrepresentations, was not raised in the proceeding below. This case was tried and appealed before *Pearce* was decided. The point simply was not relevant below, and was irrelevant until the time of our decision when *Pearce* had become the law in Georgia.

Furthermore, under certain circumstances, a *binder* is (and especially after *Pearce,* ought to be) very different from a policy of insurance. Both may be contracts (*Cincinnati Ins. Co. v. Stuart,* 139 Ga. App. 80, 81-82 (227 SE2d 771) cited in the majority opinion, Division 1); but if there is not *some* vital difference between the two with respect to the conditions of temporary coverage, then I cannot think why the law provides for binders (Code Ann. § 56-2420) and insurance companies issue them. Judge Webb quoted other cases in *Cincinnati Ins. Co.,* supra, to the effect that "the binder issued on an application for insurance is . . . intended to give temporary protection pending the investigation of the risk by the insurer, or until the issuance of a formal policy." *Fort Valley Coca-Cola Bottling Co. v. Lumbermen's Mut. Cas. Co.,* 69 Ga. App. 120, 124 (24 SE2d 846). While under *Pearce,* an insurer might be stuck on a *policy* it issues after it has had a chance to investigate the applicant, I do not think it ought to be liable when it has issued a binder based on misrepresentations of the applicant.